**In re LGI, INC., Debtor.**

**David Michaels, Distribution Trustee for LGI, Inc., Plaintiff,**

v.

**World Color Press, Inc., Grady W. Jones Company and Unarco Material Handling, Inc., Defendants.**

**Bankruptcy No. 99–39325 (RG).**
**Adversary No. 01–3642 MS.**

United States Bankruptcy Court, D. New Jersey.

March 15, 2005.

Cozen O'Connor, Jerrold N. Poslusny, Jr., Cherry Hill, NJ, for Plaintiff.

Booker, Rabinowitz, Trenk, Lubetkin, Tully, DiPasquale & Webster, P.C., Sam Della Fera, Jr., West Orange, NJ, for Defendants World Color Press, Inc. (n/k/a Quebecor World (USA), Inc.), Grady W. Jones Company and Unarco Material Handling, Inc.

Ravin Greenberg, PC, Howard S. Greenberg, Roseland, NJ, for the Official Committee of Unsecured Creditors.

### *OPINION*

MORRIS STERN, Bankruptcy Judge.

Plaintiff David Michaels is the Distribution Trustee pursuant to a Distribution Trust Agreement entered into post-confirmation with certain reorganized Chapter 11 debtors. The affiliated debtors are collectively denominated "LGI, Inc.," (hereinafter the "debtor"). On October 7, 1998 the debtor sustained a casualty loss at a printing facility owned and operated by defendant World Color in Covington, Tennessee. The debtor had a contract with World Color to produce mail-order catalogs for shipment to the debtor's customers.

Those catalogs were stored on racks in the World Color facility. When the racks collapsed, some three million catalogs were destroyed, decimating debtor's sales during the winter holidays.

On August 19, 1999 (the "Petition Date"), the debtor filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. The cases, jointly administered, resulted in a Joint Plan of Reorganization (the "Plan"),[1] which was confirmed on May 25, 2000. The Plan incorporated by reference a certain Asset Purchase Agreement and an implementing order (the "Brightline Stipulation and Order"). Certain assets *not* included in the asset sale nor passed through to the reorganized debtor (the "Excluded Assets") were assigned to the Distribution Trust for the ultimate benefit of certain creditors. Designated among the Excluded Assets were any proceeds received from the World Color casualty loss, including proceeds of a pending insurance claim. Asset Purchase Agreement ¶ 1.4(f).[2] As a corollary, and without contest from any party in interest, also included in the Trust corpus as Excluded Assets were claims against third parties (the defendants[3]) said to be responsible for the loss.[4] The Plan specifically provided that the Excluded Assets be transferred to the Distribution Trust and granted the plaintiff authority to liquidate the Excluded Assets for the benefit of certain creditors. *See* Plan §§ 1.61, 7.07. The confirmation order provided that the Bankruptcy Court retain jurisdiction to "determine any and all pending adversary proceedings ... pending on, filed or commenced after, the Confirmation Date...." Order of Confirmation, ¶ 26(c).

Insurance coverage issues arose during the pendency of the Chapter 11 case; post-confirmation and as part of his charge as Distribution Trustee, the plaintiff filed an adversary proceeding in this Court on October 10, 2000. That litigation was captioned *David Michaels, Distribution Trustee for LGI, Inc. v. New Hampshire Ins. Co.* ("New Hampshire"), Adversary Proceeding Number 00–3674 (the "coverage action"). The coverage action sought to compel New Hampshire to pay the plaintiff's loss in the Tennessee accident. New Hampshire defended on the bases that the plaintiff was late in submitting its loss claim and that the plaintiff demanded excessive and unsubstantiated damages.

While the coverage action was pending, on October 5, 2001 the plaintiff filed this adversary proceeding. The plaintiff's complaint alleged negligence and theories of contract liability against the defendants and demanded damages of $2,851,357. On December 14, 2001 the defendants filed, in lieu of an answer, the instant motion to dismiss for lack of subject matter jurisdiction. This proceeding then became inactive, pending resolution of the coverage action.

After extensive motion practice, discovery, and arbitration pursuant to the insur-

---

1. *See* docket entry 612.

2. At § 1.60 of the Plan, Excluded Assets has the meaning assigned to that term in the Brightline Stipulation and Order which, in turn, incorporates the term's definition as per the Asset Purchase Agreement.

3. World Color, a Delaware corporation with a principal place of business in Connecticut, owned and operated the printing facility. Unarco, a Tennessee corporation with a princi-

pal place of business in Tennessee, manufactured the racks on which the catalogs were stored, and GWJ, a Tennessee corporation with a principal place of business in Tennessee, supplied and erected the racks.

4. *See* "causes of action" as defined in the Distribution Trust Agreement (at Art. I, p. 3), including its there referenced linkage to Excluded Assets.

ance contract, the plaintiff and New Hampshire settled the coverage action. On November 1, 2004 the Court entered an Order approving the settlement. It provided that New Hampshire pay the plaintiff $100,000 and that the World Color action continue, with the plaintiff and the insurer participating in any net recovery. In effect the plaintiff retains approximately a twenty-five-percent interest in any such recovery, with the balance belonging to the insurer by way of its subrogation rights.

Following the long-delayed litigation/settlement process which concluded the coverage action (and helped define the damages in the World Color action), this Court rescheduled the defendants' motion to dismiss and required both parties to supplement their submissions, particularly in light of the intervening decision in *In re Resorts Int'l, Inc.*, 372 F.3d 154 (3d Cir. 2004).

The immediate motion requires the Court to determine whether it has subject matter jurisdiction post-confirmation. Can this Article I Court entertain an adversary proceeding that the Distribution Trustee commenced post-confirmation on a prepetition cause of action, which the plan of reorganization preserved for the benefit of creditors? If so, does the recent settlement of the related insurance coverage dispute, which provided for the continuation of the adversary proceeding in the name of the Distribution Trustee, but now for the benefit of both the Trust and the insurer, as subrogee, affect this Court's subject matter jurisdiction?

## DISCUSSION

### In re Resorts Int'l, Inc.

■ 28 U.S.C. § 1334 establishes the jurisdiction of the district court over bank-ruptcy cases and proceedings. 28 U.S.C. § 1334(a) grants the district court "original and exclusive jurisdiction of all cases under title 11." 28 U.S.C. § 1334(b) grants the district court "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." Since, under 28 U.S.C. § 157(a) a district court may refer all such matters to the bankruptcy court,[5] *Resorts* capsules that court's jurisdiction as follows:

> Bankruptcy court jurisdiction potentially extends to four types of title 11 matters, pending referral from the district court: " '(1) cases under title 11, (2) proceeding [sic] arising under title 11, (3) proceedings arising in a case under title 11, and (4) proceedings related to a case under title 11.' " *In re Guild & Gallery Plus*, 72 F.3d at 1175 (quoting *In re Marcus Hook Dev. Park, Inc.*, 943 F.2d 261, 264 (3d Cir.1991)). Cases under title 11, proceedings arising under title 11, and proceedings arising in a case under title 11 are referred to as "core" proceedings; whereas proceedings "related to" a case under title 11 are referred to as "noncore" proceedings. *See* 1 *Collier on Bankruptcy*, P.3.02[2], at 3–35 (15th ed. rev.2003).

372 F.3d at 162.

It is not necessary for the bankruptcy court to decide whether a matter is core or noncore under 28 U.S.C. § 157(b) in order to determine that it has jurisdiction over that matter under 28 U.S.C. § 1334(a) or (b). *Resorts*, 372 F.3d at 163, citing *Marcus Hook*, 943 F.2d at 266 ("[w]hether a particular proceeding is core represents a question wholly separate from that of subject-matter jurisdiction"). The immediate

5. *See* the Standing Order of Reference of the United States District Court of New Jersey, dated July 23, 1984, under which this Court operates.

issue for this Court then is only whether it has at least "related to" jurisdiction over the matter before it. *Resorts*, 372 F.3d at 163, citing *Donaldson v. Bernstein*, 104 F.3d 547, 552 (3d Cir.1997).

■ In the Third Circuit the seminal test for determining "related to" jurisdiction remains that set forth in *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984) (as acknowledged in *Resorts*, 372 F.3d at 164). Under *Pacor*, the bankruptcy court has "related to" jurisdiction pursuant to 28 U.S.C. § 1334(b) to hear a matter if *"the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." Pacor*, 743 F.2d at 994 (emphasis in original).[6] *Pacor* continued:

> [T]he proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom or action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

*Pacor*, 743 F.2d at 994. "A key word in this test is 'conceivable.' Certainty, or even likelihood, is not a requirement." *Marcus Hook*, 943 F.2d at 264.

■ The breadth of the *Pacor* test notwithstanding, the search for subject matter jurisdiction post-confirmation requires special scrutiny. *Resorts* observed:

> At the most literal level, it is impossible for the bankrupt debtor's estate to be affected by a post-confirmation dispute because the debtor's estate ceases to exist once confirmation has occurred.

*Resorts*, 372 F.3d at 165. Courts typically do not apply the *Pacor* analysis so literally to post-confirmation proceedings as to exclude them entirely from the jurisdiction of the bankruptcy court. *Resorts*, 372 F.3d at 165. And, although 11 U.S.C. § 1142(b) provides for post-confirmation jurisdiction to adjudicate certain disputes, the source for post-confirmation jurisdiction remains 28 U.S.C. § 1334(a) and (b). *Resorts*, 372 F.3d at 165, citing *In re United States Brass Corp.*, 301 F.3d 296, 306 (5th Cir. 2002).

*Resorts* acknowledged cases finding, generally, post-confirmation jurisdiction in the bankruptcy court,[7] and more specific precedent for post-confirmation jurisdiction in the context of continuing trusts and

---

**6.** In *Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 129, 135, 116 S.Ct. 494, 133 L.Ed.2d 461 (1995) the United States Supreme Court implicitly overruled *Pacor* for its holding at 743 F.2d at 991–92 that 28 U.S.C. § 1447(d) (which prohibits review of a remand order) does not apply in bankruptcy cases. The decision in *Things Remembered* did not disturb and indeed did not even address the *Pacor* test for related to jurisdiction. In fact, shortly before deciding *Things Remembered*, the Supreme Court in *Celotex Corp. v. Edwards*, 514 U.S. 300, 308, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995), expressly approved the test for related to jurisdiction enunciated by the Third Circuit in *Pacor*.

**7.** References were to: *United States Trustee v. Gryphon at the Stone Mansion, Inc.*, 166 F.3d 552, 555–56 (3d Cir.1999) (where the United States Trustee objected post-confirmation to the Chapter 11 debtor's motion for a final decree because the debtor had not paid Trustee fees, the bankruptcy court had "related to" (and even "arising in") jurisdiction to hear the Trustee's objection, since an award of fees to the Trustee "creates a liability [which] could impact the handling and administration of the estate"); and *Donaldson*, 104 F.3d at 552–54 (where, after the Chapter 11 debtor defaulted in payments under a confirmed plan and a creditor filed a motion to compel the debtor's compliance, the bankruptcy court reopened the case, converted it to Chapter 7, and appointed a trustee; the trustee sued the debtor's principals for false pretenses (claiming that they had obtained confirmation of a plan the terms of which they knew the debtor could not meet) and for breach of fiduciary duty (claiming that they had diverted business from the debtor to another business which they owned); notwith-

other entities established by plans of reorganization.[8] *Resorts,* 372 F.3d at 165.

■ After reviewing these cases, *Resorts* summed up the essence of the post-confirmation inquiry into subject matter jurisdiction as follows:

Though courts have varied the standard they apply post-confirmation, the essential inquiry appears to be whether there is a close nexus to the bankruptcy plan or proceeding sufficient to uphold bankruptcy court jurisdiction over the matter.... Matters that affect the interpretation, implementation, consummation, execution, or administration of the confirmed plan will typically have the requisite close nexus.[9]

372 F.3d at 166–67. Thus, while continuing trusts by their nature maintain a

standing the conversion and the state law nature of the Chapter 7 trustee's claims, the trustee charged in the bankruptcy court that the principals "violated their fiduciary duties to the unsecured creditors by diverting business from [the debtor]," *Id.* at 553; in so doing the trustee "basically [was] seeking to carry out the intent of the reorganization plan," *Id.;* the Third Circuit therefore confirmed subject matter jurisdiction, deciding that the dispute was not collateral but "implicates the integrity of the bankruptcy process," as the principals' defalcation impaired the debtor's ability to effect the plan, *Id.).*

8. *Bergstrom v. Dalkon Shield Claimants Trust (In re A.H. Robins Co.),* 86 F.3d 364, 372–73 (4th Cir.1996) (post-confirmation fee dispute between counsel and a mass tort Claimants' Trust); *New Nat'l Gypsum Co. v. Nat'l Gypsum Co. Settlement Trust (In re Nat'l Gypsum Co.),* 219 F.3d 478, 479 and 493 (5th Cir. 2000) (post-confirmation declaratory judgment action by an asbestos Settlement Trust asking the court to interpret the plan as to future claimants' rights); *Plotner v. AT & T Corp.,* 224 F.3d 1161, 1171 (10th Cir.2000) (post-confirmation litigation for fraud in the sale of assets from a plan-developed asset marketing and liquidation trust); *United States v. Unger,* 949 F.2d 231, 233–35 (8th Cir.1991) (post-confirmation action for embezzlement against the trustee of a nonliquidating plan-developed trust); *In re Eagle–Picher Indus., Inc.,* 285 F.3d 522, 524 (6th Cir.2002) (post-confirmation dispute over distribution of proceeds of an asbestos Settlement Trust).

9. Court-cited examples of cases demonstrating the requisite "close nexus" are: the underlying Litigation Claim dispute in *Resorts, see In re Resorts Int'l,* 199 B.R. 113 (Bankr. D.N.J.1996); *Bergstrom, supra;* and *Montana v. Goldin (In re Pegasus Gold Corp.),* 296 B.R. 227 (D.Nev.2003). In *Bergstrom* the bankruptcy court was found to have had related to subject matter jurisdiction post-confirmation to enter an order which modified the attorneys' contingent fee arrangement in this medical device mass tort-related bankruptcy; the court deemed the attorneys' argument that the estate had ceased to exist "too restrictive"; although the debtor had stopped operating, because both the Trust and the case would remain open until the claims had been paid, the attorney fee dispute "could have an effect on the estate being administered." 86 F.3d at 372. In *Montana* a post-confirmation entity was formed per the plan to do contracted-for environmental reclamation with the Montana Department of Environmental Quality ("DEQ"); the DEQ terminated that contract and undertook the work with another organization using employees from the post-confirmation entity; the bankruptcy court was found to have subject matter jurisdiction over the suit brought by the liquidating trustee and post-confirmation entity against DEQ for breach of contract, fraud in the inducement, and breach of the duty of good faith and fair dealing; it was determined that the DEQ's conduct, if proven, would undermine the plan and interfere with its consummation by depriving the debtors of the means to fulfill their reclamation obligations. Note that as to *Montana,* following the issuance to the *Resorts* decision, the Ninth Circuit affirmed in relevant part, adopting the *Resorts* "close nexus" test and finding that resolution of the claims involved interpreting the plan and certain related agreements. Moreover, it was found that the remedies sought in *Montana,* would, if granted, affect the execution and implementation of the plan. *Montana v. Goldin,* 394 F.3d 1189, 1194 (9th Cir.2005). In contradistinction to the aforereferenced three illustrations, the Third Circuit in *Resorts* cited two examples of insufficiently close nexus

connection to the case post-confirmation, *Resorts* admonished that the limitations embodied in "interpretation, implementation, consummation, execution, or administration of the confirmed plan" preclude the "unending jurisdiction" in bankruptcy over such trusts. 372 F.3d at 167.

In *Resorts* the issue was whether the bankruptcy court had related to jurisdiction over a professional malpractice cause initiated as an adversary proceeding by the litigation trustee against the accountant to the litigation trust nearly seven years post-confirmation. *The cause of action clearly arose post-confirmation.* The plan-created litigation trust's beneficial interests were allocated to two classes of creditors. *Resorts,* 372 F.3d at 157–58. The Trust, per the plan, " 'retain[ed] and preserve[d] the Litigation Claims for enforcement, as representative of and successor to the Reorganizing Entities in accordance with Bankruptcy Code §§ 1123(b)(3)(B) and 1145(a).' " *Resorts,* 372 F.3d at 157. These Litigation Claims, originally held by the debtor prepetition against Donald Trump and affiliates, were the assets assigned to the Trust for prosecution. After confirmation the Trustee retained a public accountant to aid in prosecuting the Litigation Claims, as provided in the Litigation Trust Agreement. The Trustee settled the Litigation Claims, and the proceeds of settlement became assets of the Trust. *Resorts,* 372 F.3d at 158.

Nearly six years after the settlement (and seven years after confirmation), the Trustee filed a professional malpractice action against the public accounting firm which he had retained. The Trustee alleged that the accountant, in a post-confirmation act, had erroneously reported certain interest accruals related to the Litigation Claims, and that the Trust had incurred damages and unnecessary litigation expense as a result. The Trustee demanded damages and fee disgorgement. *Resorts,* 372 F.3d at 158–59.[10]

The Third Circuit concluded that the Trustee's malpractice claims did not have a sufficiently close nexus to the bankruptcy plan or proceeding to allow the bankruptcy court to exercise subject matter jurisdiction over it. In rejecting the Trustee's argument the Court found the relation of the Trustee's malpractice claims to the debtor's plan and estate so attenuated that the bankruptcy court lacked jurisdiction to hear them. In particular, the Court decided:

(1) "The Litigation Trust's connection to the bankruptcy is not identical to that of the estate." The Final Plan deliberately separated the Litigation Claims from the estate so that the plan could be confirmed before those Claims were resolved and the debtor could thereby be "freed from bankruptcy court oversight." The Litigation Trust therefore did not have the same "jurisdictional nexus" as did the estate. *Resorts,* 372 F.3d at 169.

(2) The possibility that the reorganized debtor might have a claim against the Trust in the continuing dispute about accrued interest did not create a close jurisdictional nexus. As the debtor assigned all its interest in the Litigation Claims to the Trust, the debtor would have no greater status

cases: *Falise v. Am. Tobacco Co.,* 241 B.R. 48 (E.D.N.Y.1999); and, *Grimes v. Graue (In re Haws),* 158 B.R. 965 (Bankr.S.D.Tex.1993).

**10.** Obviously, the Litigation Claims did not include the later-developed malpractice cause. In this regard, it is noteworthy that

the Third Circuit readily found "a sufficiently close nexus to the plan or proceeding" and thus bankruptcy court subject matter jurisdiction over the Litigation Claims. 372 F.3d at 167.

than any other creditor of the Trust in the event that it was due a recovery. *Resorts*, 372 F.3d at 170.

(3) The resolution of the malpractice claims will "have no substantial effect on the success of the Plan." *Resorts*, 372 F.3d at 170.

(4) There was no need to interpret the Plan or the Litigation Trust Agreement in order to resolve the malpractice claims. *Resorts*, 372 F.3d at 170.

(5) The malpractice claims were ordinary state law claims for negligence and for breach of contract. That they occurred in the "context" of the Plan and Trust Agreement is a "bare factual nexus" which did not confer bankruptcy court jurisdiction. *Resorts*, 372 F.3d at 170.

(6) The potential for the malpractice action to increase the assets of the Trust "does not necessarily create a close nexus sufficient to confer 'related to' bankruptcy court jurisdiction post-confirmation." Because the beneficiaries of the Trust relinquished their status as creditors of the estate to become claimants of the Trust, "their connection to the bankruptcy plan or proceeding is more attenuated." *Resorts*, 372 F.3d at 170.

Ultimately, the Third Circuit decided that allowing any and all proceedings which have the potential for increasing the assets of a post-confirmation trust to claim the "related to" jurisdiction of the bankruptcy court would simply explode bankruptcy court jurisdiction beyond acceptable Constitutional and statutory limits:

> [I]f the mere possibility of a gain or loss of trust assets sufficed to confer bankruptcy court jurisdiction, any lawsuit involving a continuing trust would fall under the "related to" grant. Such

a result would widen the scope of bankruptcy court jurisdiction beyond what Congress intended for non-Article III bankruptcy courts.

*Resorts*, 372 F.3d at 170. "Accordingly, resolution of these malpractice claims will not affect the interpretation, implementation, consummation, execution, or administration of the Plan." *Resorts*, 372 F.3d at 170–71.

### Comparison to Resorts

Defendants' effort *sub judice* to characterize this case as being beyond the subject matter jurisdiction of this Court based upon *Resorts* encounters obvious factual hurdles. Unlike *Resorts* (where the cause at issue developed post-confirmation), here the cause of action developed prepetition. Moreover, unlike *Resorts*, *sub judice* the Plan of Reorganization and related organic orders and agreements defined the cause of action as an "asset" intended to be distributed to certain creditors as part of the reorganization process. These facts, without more, could well establish the "close nexus to the bankruptcy plan or proceeding" which the Third Circuit requires for subject matter jurisdiction. Though not involving matters of "interpretation" or "administration" of a confirmed plan, this adversary proceeding plainly serves the plan through the "implementation, consummation [and] execution" which typify many post-confirmation matters.

Notwithstanding this typicality (and the general use in the reorganization process of distribution or litigation trusts or other plan-created post-confirmation entities), the defendants challenge subject matter jurisdiction. Their arguments are:

(1) The Plan assigned all right, title and interest in the Trust Assets to the Distribution Trust, which is not a continuation of the estates "but rather a separate and distinct legal entity from the Debtors' estates"

(Defendants' Supplemental Memorandum of Law,[11] p. 6).

(2) The creditors to be benefited by a Trust recovery from the World Color action "no longer have the same connection to the bankruptcy proceeding as when they were creditors of the bankruptcy estates" (Defendants' Supplemental Memorandum, p. 6); rather, these creditors, as beneficiaries of the Trust, are no longer creditors of the estates.

(3) The World Color action was expressly assigned to the post-confirmation Trust for litigation and not specifically retained by the debtor's estate (as, for example, the claims were retained by the estate in *In re S.N.A. Nut Co.*, 206 B.R. 495, 499–500 (Bankr.N.D.Ill.1997)).

(4) The World Color claims arose prepetition but "left" the bankruptcy estate when the estate assigned its interest in those claims to the Distribution Trust (Defendants' Supplemental Memorandum, p. 7). As with any prepetition property which leaves the estate, the defendants argue, the Court loses jurisdiction over that property.

(5) The World Color action consists of "basic state-law contract and negligence claims," are not "premised on any bankruptcy law," and "do not require this Court's expertise in interpreting, implementing, consummating, or administering the terms of the Confirmed Plan or Distribution Trust Agreement." (Defendants' Supplemental Memorandum, p. 7).

In broadest terms, these arguments ignore the fundamental factual difference between the case *sub judice* and *Resorts*. To reiterate, in this case the claims in the World Color action arose prepetition and were specifically identified in the Asset Purchase Agreement among Excluded Assets. The Asset Purchase Agreement was incorporated by reference into the Plan which specifically transferred the Excluded Assets to the Distribution Trust for prosecution. (Plan § 7.07). Unlike the professional malpractice action in *Resorts*, the World Color action was not an accidental happenstance arising first in the operation of the Distribution Trust, but was an important substantive element of the Plan to be prosecuted by the Distribution Trustee. (In this regard, the matter *sub judice* closely resembles the Litigation Claims preserved in *Resorts* and acknowledged by the Third Circuit as having the requisite "close nexus." 372 F.3d at 167.) The World Color action, therefore, invokes the "implementation, consummation [and] execution" of the confirmed Plan.

Defendants' specific points of contention are addressed as follows:

1. *The "separate and distinct legal entity" argument.*

The defendants' insistence that the Third Circuit's distinction between the debtor's estate and the Litigation Trust as separate entities destroys the nexus between the Trust and the plan overstates that distinction.[12] Such a reading of *Resorts* would render meaningless the Third Circuit's effort to create a refined *Pacor* analysis applicable to post-confirmation trusts. The Third Circuit already ac-

---

11. Docket entry 39.

12. "Given the limited jurisdiction on non-Article III bankruptcy courts, jurisdiction does not extend *necessarily* to all matters involving litigation trusts." *Resorts,* 372 F.3d at 169

(emphasis added). Defendants would incorrectly restate this proposition by eliminating subject matter jurisdiction for all litigation trust post-confirmation proceedings. Such a sea change is not the import of *Resorts*.

knowledged that post-confirmation trusts by their nature maintain "a connection" to the bankruptcy, though post-confirmation trust litigation could spread bankruptcy court jurisdiction to unacceptable limits absent certain controls. *Resorts,* 372 F.3d at 167. The Court, therefore, provided a general test to establish, in the typical case, the "requisite close nexus" which supports bankruptcy court jurisdiction ("[m]atters that affect the interpretation, implementation, consummation, execution, or administration of the confirmed plan"). *Resorts,* 372 F.3d at 167. Defendants' overstated position would recharacterize the nature of a post-confirmation trust litigation so that *every* post-confirmation trust case would fail the "close nexus" test by virtue of having an identity separate from the debtor's estate. *Resorts* does not so eliminate, wholesale, related to jurisdiction as to all post-confirmation trust litigation in the bankruptcy court.[13] In the case *sub judice* this Court finds, regardless of any entity distinction between the debtor's estate and the Distribution Trust, that the prosecution of the World Color action promotes the "implementation, consummation [and] execution" of the Plan. The adversary proceeding therefore maintains the requisite close nexus to the Plan and sustains post-confirmation related to subject matter jurisdiction in the bankruptcy court. Indeed, the Plan was in part premised and confirmed on the basis of potential proceeds of this action being distributed to creditors.

*2. The argument that the creditors who would benefit from any litigation recovery "no longer have the same connection to the bankruptcy proceeding."*

Again, the defendants would have this Court "disconnect" the Plan-contemplated benefits of post-confirmation litigation from the actualizing of that litigation, as if the chose-in-action (i.e., the World Color action) were not an asset to be distributed to *creditors* of the debtor's estate. Unlike the post-confirmation malpractice claim in *Resorts,* the World Color action here is both logically linked to the debtor's prepetition losses, and entrusted to the plaintiff *via the Plan for the benefit of creditors.*

*3. The argument that complete assignment of the World Color action to the Trust severs the jurisdictional nexus.*

This challenge by the defendants extends their theme based largely upon mechanics of Plan implementation rather than bankruptcy policy. Defendants' reference to *S.N.A. Nut* is, however, unavailing in this regard. In that case, *the estate* retained, per a plan of liquidation, a certain prepetition cause of action. However the jurisdictional lynchpin was not the estate's retention, but rather *implementation of the plan.*[14]

*4. The argument that jurisdiction "lapses" because the World Color action "left the estate."*

This is yet another recasting of all-too-mechanical defense arguments and is like-

---

13. *See* n. 8, *supra.*

14. *Zerand–Bernal Group, Inc. v. Cox,* 158 B.R. 459, 463 (N.D.Ill.1993), *aff'd* 23 F.3d 159 (7th Cir.1994) was quoted in *S.N.A. Nut* (206 B.R. at 500), as follows:

> On the one hand, it is important for a bankruptcy court to retain jurisdiction so that it can monitor property transferred in *accordance with the terms of the plan of reorganization;* however, it is also important to end the reorganization process at

some point so that the participants can go about their business without constant bankruptcy court supervision or approval.

(Emphasis added.) Again, emphasizing plan implementation, *S.N.A. Nut* acknowledged that "[o]ther courts have exercised jurisdiction over post-confirmation disputes when the matter sufficiently impacted on creditors' recoveries *under a plan of reorganization.*" 206 B.R. at 500 (emphasis added).

wise not supported by *Resorts*. Such an argument, if correct, would have impelled the Third Circuit in *Resorts* to deem that the prepetition Litigation Claims could not be adjudicated in the bankruptcy court. Instead, the Third Circuit used a dispute involving the Litigation Claims as "[a]n example . . . in which there was a sufficiently close nexus to the plan or proceeding. . . ." *Resorts*, 372 F.3d at 167.[15] Rather than referring to the *Resorts* Litigation Claims, defendants cite by way of analogy *Grimes*. *Grimes*, however, used by the Third Circuit in *Resorts* as an example of a nonproximate nexus case (372 F.3d at 168), is not helpful to the defendants. In *Grimes* the Trustee of the Liquidating Trust which had been created by the confirmed plan of these *individual* Chapter 11 debtors filed an adversary proceeding two years after confirmation against one debtor's former business partner. The Trustee sought, for the benefit of creditors, to recover funds which the partner received and which the Trustee alleged were due the debtor. *Grimes*, 158 B.R. at 967. The bankruptcy court found that it lacked subject matter jurisdiction over the Trustee's adversary proceeding:

> [T]he charges which form the basis of this adversary proceeding were not raised until after the plan had been confirmed and the bankruptcy case closed. If these causes of action were assets of [the debtors], apparently they were not treated in the confirmed plan. The record reflects that [the partner] did not file a proof of claim in this bankruptcy

case, nor was the claim pertaining to the purported partnership listed in the debtors' schedules. [The debtor] has never sent a demand letter to [the partner] nor complained that [the partner] diverted revenues from him. This adversary appears to be an effort by some of [the debtors'] creditors to proceed after the bankruptcy is over with against a non-debtor third party who was never involved in this bankruptcy case.

> Additionally, the causes of action asserted do not involve federal bankruptcy law. *Assets such as the lawsuit embodied in this adversary that are not drawn into the plan are vested with the debtor upon confirmation, and matters concerning the disposition of these non-plan assets do not affect the implementation or execution of the plan.*

*In re Grimes*, 158 B.R. at 970 (emphasis added) (internal citation omitted). The cause of action at the center of the jurisdictional dispute in *Grimes* involved state law claims which arose prepetition; which were never referred to in the bankruptcy case, in the plan, or at confirmation; which consequently vested in the debtors at confirmation; and which simply represented an effort to increase post-confirmation trust assets *but not through implementation of the plan.* By contrast, in the case *sub judice*, the plan and supporting documents sufficiently identified the trustee's claims and assigned them to the post-confirmation trust for the benefit of certain creditors. Consequently, this proceeding

---

15. The full text of the Third Circuit's positive reference to this dispute is as follows:

> An example of a dispute in which there was a sufficiently close nexus to the plan or proceeding to uphold bankruptcy court jurisdiction post-confirmation was an earlier proceeding involving the Resorts International, Inc. bankruptcy. *See In re Resorts Int'l*, 199 B.R. 113 (Bankr.D.N.J.1996). There, unlike here, the Bankruptcy Court

was required to construe and enforce provisions of the Plan to resolve a post-confirmation dispute over whether the Litigation Trust or the debtor was entitled to accrued interest. *Id.* at 120–25. The court correctly held that it retained jurisdiction to enter appropriate orders to enforce the intent and specific provisions of the Plan. *Id.* at 118–19.

invokes the "implementation, consumma-tion [and] execution" of the plan and main-tains the close nexus which confers subject matter jurisdiction on this Court.

Although the defendants did not cite *Falise, supra,* this nonproximate nexus case used by way of illustration by the Third Circuit in *Resorts* is likewise not helpful to the defendants. There the post-confirmation Trust created in the Johns–Manville asbestos bankruptcy sued tobacco manufacturers for their purported cause or worsening of asbestos-related injuries. *Falise,* 241 B.R. at 54. The possibility of suing tobacco manufacturers was consid-ered during the bankruptcy case but not adopted as part of the plan. *Id.* at 54. The court in *Falise* noted that the debtor was not a party to the Trust's suit and indeed had "been freed of any connection to all asbestos litigation" by the termi-nation of the bankruptcy and by the spe-cial "safe harbor" provisions of 11 U.S.C. § 524(g) and (h). *Id.* at 57. The court characterized the adversary proceeding as involving "an entity that was a product of the bankruptcy proceeding ... [suing] a third party for money allegedly owed to it." *Id.* at 57. The possibility that tobacco litigation would increase the distribution to Trust claimants was insufficient to confer subject matter jurisdiction *Id.* at 58. By contrast, the claims which the plaintiff pur-sues in the case *sub judice* were not an independent afterthought of the post-con-firmation trustee, but were integral to the Plan, thus maintaining the close nexus

which confers bankruptcy court jurisdic-tion.[16]

5. *Since the World Color action is state-law based, the defendants contend that this Court should not exercise jurisdic-tion.*

This, of course, is not an argument against subject matter jurisdiction, but rather in favor of abstention.[17] Indeed, if the adversary proceeding at issue was "premised on ... bankruptcy law," core rather than related to jurisdiction would be implicated, and subject matter jurisdic-tion post-confirmation could be more readi-ly established. In fact, the Third Circuit recognized in *Resorts* that the requisite jurisdictional nexus could exist for state law based proceedings. *Montana,* re-ferred to with approval in *Resorts,* is a clear illustration of such a state law case. *See* 372 F.3d at 168.

\*   \*   \*   \*   \*   \*

Two additional points should be ad-dressed in evaluating this Court's subject matter jurisdiction over the World Color action. Does the participation in any re-covery by the debtor's insurer (as subro-gee) attenuate the close nexus to the Plan needed for continuing jurisdiction? And, does the passage of time since confirma-tion negate jurisdiction?

### Subrogee's Participation

■ The immediate adversary proceed-ing was initiated by the Distribution Trus-tee for the benefit of creditors, plainly as contemplated in the Plan and in further-

---

**16.** A lesson to be drawn from the Third Cir-cuit's reference to *Grimes* and *Falise* is that a post-confirmation *asserted* cause of action which merely enhances the post-confirmation entity's assets but does not call for plan "in-terpretation, implementation, consummation, execution, or administration," will not in the ordinary course have the requisite close juris-dictional nexus. This is the case even where the cause of action *arises* prepetition.

**17.** Given that (i) this adversary proceeding has been pending for years and is now im-pacted by resolution of the coverage action, and (ii) no state court litigation involving the same causes and parties was ever initiated, mandatory abstention could not be satisfied (*see* 28 U.S.C. § 1334(c)(2)), nor could per-missive abstention be reasonably exercised (*see* 28 U.S.C. § 1334(c)(1)).

ance of Plan objectives. Plan implementation likewise anticipated the coverage action. While two such litigations could under certain circumstances be collapsed into a single adversary proceeding, these cases include separate and distinct issues (e.g., notice and policy interpretation issues exclusive to the coverage action). In any event, as *originally* formulated and initiated, both matters were to develop distributions to the Trust beneficiaries (i.e., creditors provided for in the Plan).

The fact that resolution of the coverage action vested the subrogee insurer with an interest in the long-pending contract/product liability/negligence case should not cause this Court's jurisdiction to suddenly "evaporate." And, the Trust remains a party with an ultimate interest in any recovery to the extent of approximately twenty-five percent.[18]

### Passage of Time Since Confirmation

■ The age of this Chapter 11 case, as extended by this litigation, is troubling as a matter of court administration. However, *Resorts* was careful to point out the following:

> Price Waterhouse also argues the lapse of time since confirmation factors against bankruptcy jurisdiction. The Bankruptcy Court issued an Order confirming the Plan on August 28, 1990. The Trustee filed this malpractice action

on April 15, 1997. The Trustee responds that Price Waterhouse's malpractice "began barely after the ink dried on the confirmation order," and notes that Price Waterhouse released its allegedly erroneous report that the interest income belonged to the Debtor in 1992.... Though in some circumstances, the lapse of time since confirmation may be relevant to whether a matter has a "close nexus" to a bankruptcy plan or proceeding, we do not find it to be so here.

372 F.3d at 171 n. 12.

In *Resorts*, the adversary proceeding was filed almost seven years after the confirmation (though the acts of alleged malpractice occurred immediately after confirmation). Passage of time was not found to be relevant in assessing the "close nexus" issue. *Sub judice*, prepetition acts were embodied in a Plan-contemplated complaint filed about sixteen months postconfirmation (and following the filing of the coverage action a year earlier). The long delay in this case was *after* these proceedings were initiated; such delay should not be relevant to the subject matter jurisdiction over *pending* litigation.

### CONCLUSION

This Court has subject matter jurisdiction of the World Color adversary proceed-

---

18. While this Court's post-confirmation jurisdiction should not be "endless," consideration of the variations in post-confirmation circumstances might well be perpetual. One could posit different facts: e.g., there being *no remaining Trust interest* in the outcome and/or the subrogation case being initiated only *after* the coverage dispute is settled. Whether the close nexus to Plan implementation shall have attenuated under such different factual scenarios is worth pondering. Questions of supplemental jurisdiction under 28 U.S.C. § 1367 might also be implicated. *See Chapman v. Currie Motors, Inc.*, 65 F.3d 78, 81 (7th Cir.1995) ("There is a serious question whether 28 U.S.C. § 1367 is applica-

ble to bankruptcy cases."); *Walker v. Cadle Co. (In re Walker)*, 51 F.3d 562, 570 (5th Cir.1995) ("[W]e do not address the difficult question of whether a *district court* may address claims that are supplemental to its bankruptcy jurisdiction."); Susan Block–Lieb, *The Case Against Supplemental Bankruptcy Jurisdiction: A Constitutional, Statutory, and Policy Analysis*, 62 FORDHAM L.REV. 721 (1994). *But see Montana*, 394 F.3d at 1194–95; *Security Farms v. Int'l Broth. of Teamsters*, 124 F.3d 999, 1009 n. 5 (9th Cir.1997) (holding that a claim "only tenuously connected to" the bankruptcy estate came within the district court's supplemental jurisdiction).

ing; that litigation, contemplated by the Plan and part of the corpus of the Distribution Trust, serves the "implementation, consummation [and] execution" of the Plan. Consequently, the requisite close nexus to the Plan is clear. Neither reallocation of the potential benefits of the litigation by virtue of the subrogee's after-acquired interest, nor the delay in advancing the long-pending adversary proceeding toward trial attenuates that close nexus. Defendants' motion is therefore DENIED.

The Court will enter its implementing order.