In re EXDS, INC. (f/k/a Exodus Communications, Inc.), et al., Debtors.

EXDS, Inc. (f/k/a Exodus Communications, Inc.), Plaintiff,

v.

CB Richard Ellis, Inc. (a/k/a CB Commercial Real Estate Group, a/k/a Insignia/ESG, Inc., n/k/a CB Richard Ellis Real Estate Services, Inc.), Highgate Holdings, Inc., Defendants.

Bankruptcy No. 01–10539 (PJW).
Adversary No. 03–56185 (PJW).

United States Bankruptcy Court, D. Delaware.

Oct. 13, 2006.

Victoria Watson Counihan, Dennis A. Meloro, Greenberg Traurig, LLP, Wilmington, DE, Daniel J. Ansell, Ronald D. Lefton, Heath B. Kushnick, New York, NY, for Defendant CB Richard Ellis Real Estate Services, Inc. f/k/a Insignia/ESG, Inc. sued herein as CB Richard.

David M. Fournier, James C. Carignan, Pepper Hamilton LLP, Wilmington, DE, Beverly A. Whitley, John R.W. Fugitt, Bell Nunnally & Martin LLP, Dallas, TX, for Defendant Highgate Holdings, Inc., Ellis, Inc., (a/k/a CB Commercial Real Estate Group, a/k/a Insignia/ESG, Inc. n/k/a CB Richard Ellis Real Estate Services, Inc.).

David J. Margules, John M. Seaman, Bouchard Margules & Friedlander, P.A., Wilmington, DE, Jeffrey A. Koppy, Brian H. Meldrum, Thomas P. Monroe, Jenner & Block LLP, Chicago, IL, for Plaintiff EXDS, Inc.

## MEMORANDUM OPINION

PETER J. WALSH, Bankruptcy Judge.

■ This opinion is with respect to the defendant CB Richard Ellis, Inc.'s (a/k/a CB Commercial Real Estate Group, a/k/a Insignia/ESG, Inc., n/k/a CB Richard Ellis Real Estate Services, Inc.) ("CBRE") motion to dismiss the complaint of plaintiff EXDS, Inc. ("EXDS" or "the plaintiff"), or in the alternative, to determine that this proceeding is non-core (Adv.Doc. # 83). Defendant Highgate Holdings, Inc. ("Highgate") has filed a joinder to the motion (Adv.Doc. # 96). The defendants argue that this Court lacks subject matter jurisdiction over this proceeding. For the reasons stated below, the Court will deny the defendants' motion to dismiss.[1]

---

1. By a June 21, 2006 letter ruling this Court found that this proceeding is non-core (Adv. Doc. # 112). Whether a proceeding is core or non-core has no bearing on the court's subject matter jurisdiction over the case. *Binder v. Price Waterhouse & Co., LLP (In re*

## BACKGROUND

EXDS filed a petition for relief under chapter 11 of Title 11 of the United States Code on September 26, 2001. (Adv.Doc. # 84, p. 3). A liquidation plan (the "Plan") was confirmed on June 5, 2002 (the "Confirmation Order"). (*Id.*, Ex. 1). The Plan became effective on June 19, 2002. (*Id.*, at 3).

On September 25, 2003, EXDS filed a complaint against CBRE and Highgate related to a transaction that occurred in 1999 between GlobalCenter, Inc. ("GlobalCenter") (a predecessor-in-interest to EXDS) and Insignia/ESG, Inc. ("Insignia") (a predecessor-in-interest to CBRE). (Adv.Doc. # 1). After discovery, which is still ongoing, the plaintiff filed the First Amended Complaint against CBRE and Highgate which alleges claims against CBRE for breach of contract, unjust enrichment and promissory estoppel and claims against Highgate for breach of contract and unjust enrichment (the "Claims"). (Adv.Doc. # 74, Ex. 1, ¶¶ 32–92).

The First Amended Complaint alleges the following:

In the fall of 1999, GlobalCenter retained Insignia to locate lease space in New York City for a new data center. (*Id.* at Ex. 1, ¶ 11). GlobalCenter and Insignia entered into a commission-sharing agreement under which Insignia agreed to pay GlobalCenter 50% of any commission that Insignia earned from the landlord in connection with the GlobalCenter lease. (*Id.*). On December 28, 1999 GlobalCenter executed a lease with the landlord of a building, thereby generating a commission for Insignia. (*Id.* at Ex. 1, ¶ 13). The plaintiff alleges that Insignia failed to pay GlobalCenter the 50% share of the commission that it had promised under the commission-sharing agreement. (*Id.* at Ex. 1, ¶ 39).

When GlobalCenter needed more office space, GlobalCenter and Insignia entered into another agreement under which Insignia agreed again to pay a percentage of the commission fees. (*Id.* at Ex. 1, ¶ 16). The plaintiff claims that Insignia similarly failed to pay these fees. (*Id.* at Ex. 1, ¶ 20). On May 24, 2000, representatives of GlobalCenter and Insignia met to renegotiate the amount of the fees that Insignia owed to GlobalCenter and agreed to reduce the percentage to 35%. (*Id.* at Ex. 1, ¶ 21). The parties signed a contract agreeing to this percentage on June 5, 2000. (*Id.* at Ex. 1, ¶ 22). As with the previous contracts, the plaintiff claims that Insignia never paid any portion of the fees agreed to under this renegotiated contract. (*Id.* at Ex. 1, ¶ 26).

In the course of their business dealings relating to commercial real estate leasing, Insignia assigned to Highgate its obligation to share commissions with GlobalCenter. (*Id.* at Ex. 1, ¶¶ 17 and 24).

## DISCUSSION

■ The motion to dismiss the complaint is pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 7012 of the Federal Rules of Bankruptcy Procedure, arguing that the Court lacks subject matter jurisdiction over this proceeding. Subject matter jurisdiction over bankruptcy cases and proceedings originates in 28

---

*Resorts Int'l, Inc.),* 372 F.3d 154, 163 (3d Cir.2004) (" '[W]hether a particular proceeding is core represents a question wholly separate from that of subject-matter jurisdiction.' ") (quoting *In re Marcus Hook Dev. Park, Inc.,* 943 F.2d 261, 266 (3d Cir.1991)). By a

July 21, 2006 Memorandum Order the District Court denied the defendant's motion to withdraw the reference "without prejudice to [defendant's] right to renew the Motion at the conclusion of the pre-trial proceedings." (Adv.Doc. # 115, p. 5).

U.S.C. § 1334 (2006). Section 1334(a) grants the courts "original and exclusive jurisdiction of all cases under title 11," and 1334(b) (2006) grants "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." Thus, a bankruptcy court may exercise jurisdiction over four categories of title 11 matters: "(1) cases under title 11, (2) proceedings arising under title 11, (3) proceedings arising in a case under title 11, and (4) proceedings related to a case under title 11." *In re Marcus Hook,* 943 F.2d at 264.

■ The plaintiff asserts that the Court has jurisdiction over the defendants because the dispute at issue in this case is "related to a case under title 11." 28 U.S.C. § 157(a) (2006). The Third Circuit has noted the broad expanse of "related to" jurisdiction, stating that bankruptcy courts may exercise such jurisdiction in cases where "the outcome could conceivably have any effect on the estate being administered in bankruptcy." *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir. 1984).[2] "A key word in this test is 'conceivable.' Certainty, or even likelihood, is not a requirement." *In re Marcus Hook,* 943 F.2d at 264. However, the broad reach of "related to" jurisdiction "does not extend indefinitely, particularly after the confirmation of a plan and the closing of a case." *In re Resorts Int'l, Inc.,* 372 F.3d at 164 (quoting *Donaldson v. Bernstein,* 104 F.3d 547, 553 (3d Cir.1997)). Once a plan has been confirmed, a bankruptcy court's jurisdiction over matters related to the case diminishes. *AstroPower Liquidating Trust v. Xantrex Tech., Inc. (In re AstroPower Liquidating Trust),* 335 B.R. 309, 323 (Bankr.D.Del.2005). The Third Circuit has noted that "[a]t the most literal level, it is impossible for the bankrupt debtor's estate to be affected by a post-confirmation dispute because the debtor's estate ceases to exist once confirmation has occurred." *In re Resorts Int'l, Inc.,* 372 F.3d at 165. However, courts do not apply the "effect on the estate" test from *Pacor* so literally as to exclude all jurisdiction over post-confirmation disputes. *Id.* Courts may exercise post-confirmation jurisdiction when "there is a close nexus to the bankruptcy plan or proceeding, as when a matter affects the interpretation, implementation, consummation, execution, or administration of a confirmed plan or incorporated litigation trust agreement." *Id.* at 168–69.

■ The plaintiff argues that there is a sufficiently close nexus between the Claims and the bankruptcy case because (1) the Claims arose pre-petition and entered into the estate; (2) the Plan gave the estate the power and authority to prosecute the Claim and the creditors voted to approve the Plan in reliance on the retention of the Claims; (3) the Plan stated that the Court would retain jurisdiction over the Claims; (4) the debtor/estate is prosecuting the Claims rather than some non-bankruptcy vehicle, such as a litigation trust; and (5) the proceeds of the Claims, if any, will be distributed to the estate's creditors. (Adv.Doc. # 98, p. 10). The plaintiff draws comparison to two recent decisions within the Third Circuit where post-confirmation jurisdiction has been found: *In re AstroPower Liquidating Trust,* 335 B.R. at 325 (finding that where "the Plan specifically describes an action over which the Court had 'related to' jurisdiction pre-confirmation and expressly pro-

---

**2.** The U.S. Supreme Court favorably discussed the *Pacor* test for "related to" jurisdiction in *Celotex Corp. v. Edwards,* and noted that eight other circuit courts had adopted the *Pacor* test with little or no variation. 514 U.S. 300, 308 n. 6, 115 S.Ct. 1493, 1499, 131 L.Ed.2d 403, 411 (1995).

vides for the retention of such jurisdiction to liquidate that claim for the benefit of the estate's creditors, there is a sufficiently close nexus with the bankruptcy proceeding to support jurisdiction post-confirmation"); and *Michaels v. World Color Press, Inc. (In re LGI, Inc.)*, 322 B.R. 95, 108 (Bankr.D.N.J.2005) (finding that post-confirmation litigation of pre-petition claims that were "contemplated by the Plan and part of the corpus of the [Plan-created] Trust, serves the 'implementation, consummation, [and] execution' of the Plan").

The Court finds the plaintiff's reasoning and cases to be persuasive and it will address each of the plaintiff's arguments in turn.

### A. The Claims Arose Pre–Petition and Entered the Estate

■ The events in question in this case (the negotiation and execution of various contracts between the plaintiff and the defendants and the defendants' alleged breach) occurred in 1999 and 2000, some months before the plaintiff filed for bankruptcy on September 26, 2001. Potential claims against third parties automatically enter the debtor's estate upon filing for bankruptcy. 5 COLLIER ON BANKRUPTCY § 541.08 (15th ed.2006). If the plaintiff had brought the Claims before confirmation the Court would have clearly had "related to" jurisdiction over the Claims.

Given that the claims arose pre-petition, this court does not face the same concerns that the Third Circuit faced in *Resorts*, a case the defendants attempt to analogize to this one. In *Resorts*, the plaintiff litigation trust alleged that, shortly after confirmation of the plan, the defendant accounting firm committed professional malpractice by making several errors in its accounting and tax advice. *In re Resorts*, 372 F.3d at 156–57. The Third Circuit was concerned that extending jurisdiction to post-confirmation claims like the ones

in *Resorts* would "raise the specter of 'unending jurisdiction.'" *Id.*, at 167. However, there is no danger of a bankruptcy court's jurisdiction extending on *ad infinitum* when the claims arose pre-petition and were expressly implicated in the Plan. Claims such as the ones in this case pose no threat of extending the bankruptcy court's jurisdiction past the natural barrier of their respective statutes of limitations.

### B. The Claims Were Incorporated Into the Plan

■ The Third Circuit has made it clear that plan provisions that purport to preserve the bankruptcy court's jurisdiction are not alone sufficient to establish post-confirmation jurisdiction. *Id.* at 161 ("Retention of jurisdiction provisions will be given effect, assuming there is bankruptcy court jurisdiction. But neither the bankruptcy court nor the parties can write their own jurisdictional ticket."). Where a bankruptcy court lacks jurisdiction under 28 U.S.C. § 1334 and 28 U.S.C. § 157, no provision of a plan or an agreement between the parties is sufficient to establish jurisdiction. *In re Continental Airlines, Inc.*, 236 B.R. 318, 323 (Bankr.D.Del.1999), *aff'd*, 2000 WL 1425751 (D.Del. Sept.12, 2000), *aff'd*, 279 F.3d 226 (3d Cir.2002).

■ However, while preserving jurisdiction in the plan does not act to confer jurisdiction, it can provide proof of a close nexus between the claims and the bankruptcy case.

[W]here ... the Plan specifically describes an action over which the Court had "related to" jurisdiction pre-confirmation and expressly provides for the retention of such jurisdiction to liquidate that claim for the benefit of the estate's creditors, there is a sufficiently close nexus with the bankruptcy proceeding to support jurisdiction post-confirmation.

*In re AstroPower Liquidating Trust*, 335 B.R. at 325.

The Plan in this case states that the "Court will retain ... jurisdiction to ... [h]ear and determine the causes of action by or on behalf of the Debtors or Reorganized EXDS, including causes of action relating to the Litigation Claims" (Adv. Doc. # 99, Ex. 2, p. B0109). The "Litigation Claims" include "[c]auses of action arising out of or related to the Debtors' acquisitions of ... GlobalCenter, Inc.," (*Id.*, at Ex. 3, p. B0122), "[c]auses of action against certain of the Debtors' real estate brokers and advisors," (*Id.*, at Ex. 3, p. B0124), and "[c]auses of action against certain of the Debtors' customers, including the customers listed on Schedule 3." (*Id.*). CBRE is among those customers listed in Schedule 3. (*Id.*, at Ex. 3, p. B0143). This language describes the plaintiff's Claims with sufficient specificity to warrant the application of post-confirmation jurisdiction. The Plan also contains numerous sections that seek to broadly retain any and all claims regardless of whether they are specifically enumerated.[3]

The language of the Plan compares favorably with the language of the plan in *AstroPower*, where the court found that it had subject matter jurisdiction over state law claims against the defendants that arose out of their role in the debtor's sale of a specified stock interest. *In re Astro-Power Liquidating Trust*, 335 B.R. at 325. The plan in that case provided for the retention of jurisdiction "to enable the Debtor or the [Plaintiff] ... to prosecute and/or settle any and all Litigation Claims." *Id.* at 324. The term "Litigation Claims" was defined to include "causes of action arising out of or in connection with the Debtor's sale of stock in Xantrex Technology, Inc." *Id.* The specificity used in the *AstroPower* plan to identify the claims at issue is comparable to the specificity of the references to the Claims in the EXDS Plan.

The language of the Plan is clearly more descriptive than the language used in two cases that the defendants have relied upon heavily: *Shandler v. DLJ Merch. Banking, Inc. (In re Insilco Techs., Inc.)*, 330 B.R. 512 (Bankr.D.Del.2005); and *Grimes v. Graue (In re Haws)*, 158 B.R. 965, 971 (Bankr.S.D.Tex.1993), *cited with approval in In re Resorts*, 372 F.3d at 168. In

---

3. The following statements from the Plan that indicate that a broad range of litigation was anticipated under the Plan:

Litigation Claims means the Claims, rights of action, suits or proceedings ... that any Debtor or Estate may hold against any Person, *including but not limited to* the Claims, rights of action, suits and proceedings listed in the Plan Supplement. (Adv. Doc. # 99, Tab 2 0069) (emphasis added).

Litigation claims ... *include* but are not limited to the following causes of action and claims .... (*Id.*, Tab 3 0123) (emphasis added).

[T]he Debtors and their Estates shall retain the Litigation Claims. Reorganized EXDS, may ... enforce, sue on, settle or compromise (or decline to do any of the foregoing) any or all of the Litigation Claims. A schedule of Litigation Claims will be included in the Plan Supplement; *provided, however,* that the failure of the Debtors to list a claim, right of action, suit or proceeding in the Plan Supplement shall not constitute a waiver or release by the Debtors or their Estates of such claim, right of action, suit or proceeding. (*Id.* at Tab 2, 0091).

In addition to possible causes of action and claims listed herein, the Debtors may have, in the ordinary course of business, numerous causes of action, claims or rights against vendors or others with whom they deal in the ordinary course of business ("Ordinary Course Claims") .... The debtors and the Reorganized EXDS (as defined in the Plan) reserve their right to enforce, sue on, settle or compromise (or decline to do any of the foregoing) the Ordinary Course Claims, as well as the claims and causes of action listed herein. (*Id.* at Tab 3, 0123 n. 1).

*Insilco* the court found that the plan did not specifically enumerate the claims against the defendants sufficient to preserve post-confirmation jurisdiction. *Id.* at 525. The plaintiff litigation trust in *Insilco* asserted various claims against one of the debtor's creditors and several other defendants for exercising undue control over the debtor to advance their own interests and drive the debtor into insolvency. *Id.* at 515. The plan in that case provided that all "Rights of Action" be transferred to a litigation trust, along with the responsibility of "filing, prosecuting and settling the Rights of Action." *Id.* at 517. The plan defined "Rights of Action" as

> [a]ll actions, causes of action, suits, rights of action ... arising under any theory of law or equity, including, without limitation, the Bankruptcy Code, including the Avoidance Actions and all claims against Creditors or Holders of Interests, parties having dealings, relationships or transactions with or related to the Debtors, any party named or identified in the Schedules or any pleadings filed in the Chapter 11 Cases (including, but not limited to, officers and directors of the Debtors and parties other than the Released Lender parties and Released Employees), in each case held by or in favor of any of the Debtors or their estates whether or not commenced as of the Effective Date, but excluding any of the foregoing which (i) are Released Claims or (ii) related to the recovery of Settlement Proceeds, including the Star Services Litigation and the Tax Refunds.

*Id.* While this definition contains language broad enough to encompass the plaintiff's claims, it fails to specifically mention, as the EXDS Plan does, either the names of the defendants or the nature of the claims. The court emphasized the lack of specific references in ruling that it did not have jurisdiction over the claims:

> [N]either the Plan nor Disclosure Statement specifically identifies the claims against the defendants as an asset to be liquidated and distributed to creditors. The general language of the Plan and Disclosure Statement concerning post-confirmation litigation does not provide any notice to creditors (or to the Court, for that matter) as to the importance of this or any particular litigation. If the litigation is truly so critical to the Plan's implementation, it would have been more specifically described in the Disclosure Statement and Plan so that creditors could have considered its effect when deciding whether to vote in favor of the Plan.

*Id.* at 525.

The specificity of the references to the claims in the EXDS Plan similarly distinguishes the case at hand from *In re Haws*, 158 B.R. 965. In *Haws*, a litigation trust filed an adversary proceeding against one of the debtor's former business partners two years after confirmation of the plan. *Id.* at 968. In refusing to find jurisdiction over the dispute, the court pointed out that

> [t]he charges which form the basis of this adversary proceeding were not raised until after the plan had been confirmed and the bankruptcy case closed.... This adversary appears to be an effort by some of [the debtors'] creditors to proceed after the bankruptcy is over with against [sic.] a non-debtor third party who was never involved in this bankruptcy case.

*Id.* at 970 (internal citation omitted). While the plan in *Haws* made no mention of the claims that the litigation trust asserted, the EXDS Plan makes specific references that anticipate the Claims against CBRE.

█ CBRE points out an interesting factual puzzle in the plaintiff's position.

The contracts in dispute in this case were entered into by GlobalCenter and Insignia. Insignia later merged into CBRE, but, according to CBRE, not until July 2003, over a year after the Plan was confirmed. (Adv.Doc. # 74, Ex. 1, ¶ 6). CBRE argues that the plaintiff is being "disingenuous" in asserting that the section of the Plan that retains jurisdiction over "[c]auses of action against certain of the Debtors' customers", including CBRE, anticipated these Claims against CBRE (Adv.Doc. # 106, p. 5). CBRE notes that the Claims concern CBRE's role as a real estate broker rather than a customer, and, furthermore, the contracting party, Insignia, is nowhere named in the Plan, and did not become part of CBRE until after confirmation.[4] *Id.* However, this discrepancy notwithstanding, it is clear that the Claims against the defendants were properly preserved in the Plan. Provision (14) of Exhibit A of the Plan lists "[c]auses of action against certain of the Debtors' real estate brokers and advisors, *including* causes of action against CPS, George Reilly and Justin Reilly." (Adv.Doc. # 99, Ex. 3, p. B0124) (emphasis added). This language clearly encompasses claims against Insignia, to which CBRE must answer as Insignia's successor in interest.[5]

## C. The Plan Reserves Jurisdiction Over the Claims

As stated in the previous section, while the plaintiff cannot "write [its] own juris-dictional ticket" in the Plan, *In re Resorts*, 372 F.3d at 161, specifying the claims that the plaintiff will bring after confirmation creates a closer nexus between those claims and the bankruptcy case. Specific reference to the Claims in the Plan shows that the debtor and the creditors considered the Claims to be assets of the estate and treated them as an "important substantive element of the Plan." *In re LGI, Inc.*, 322 B.R. at 103. As the Claims were manifestly "contemplated by the Plan," litigating them "serves the 'implementation, consummation, [and] execution' of the Plan," thereby creating a greater nexus. *Id.* at 107 (quoting *In re Resorts*, 372 F.3d at 168–69).

## D. The Debtor/Estate is Prosecuting the Claims Rather Than a Litigation Trust

The plaintiff asserts that the nexus between the Claims and the bankruptcy case is even closer in this case than *AstroPower*, because while the claims in *AstroPower* were transferred to a litigation trust, EXDS retained its Claims. The Third Circuit in *Resorts* took issue with the fact that, rather than the reorganized debtor bringing the claims, a litigation trust whose beneficiaries were creditors from the bankruptcy case brought claims against the defendants. *In re Resorts*, 372 F.3d at 170. The plaintiffs had argued that there was a close nexus between the

---

**4.** The Court notes that the customer list attached to the Plan in Schedule 3 identifies over 4,000 customers. It seems understandable that the drafters of the Plan could overlook a few parties with which the debtor had commercial dealings, including Insignia.

**5.** In addition, I note a glitch in the defendants' affidavit submitted on this acquisition matter. It is clear that the plaintiff was dealing with "Insignia/ESG, Inc." The affidavit states that "CB Richard Ellis Real Estate Services, Inc." acquired "Insignia/ESG, Inc." on July 23, 2003—referencing an attached Exhibit A. However, Exhibit A is with respect to a merger of "Apple Acquisition Corp." and "Insignia Financial Group, Inc." Likewise, attached Exhibit C (a press release) refers to "CB Richard Ellis" acquisition of "Insignia Financial Group, Inc." I have not been able to figure this out with all the different entity names but paragraph 3 of the affidavit is not helpful to the extent it purports to state what the two exhibits show. In any event, CBRE itself is a named target in the Plan.

claims and bankruptcy case because the proceeds of the claims would be distributed to the creditors who were the trust's beneficiaries. *Id.* In response the court stated that the beneficiaries

> no longer have the same connection to the bankruptcy proceeding as when they were creditors of the estate. For reasons they believed financially prudent, they traded their creditor status as claimants to gain rights to the Litigation Trust's assets. Thus, their connection to the bankruptcy plan or proceeding is more attenuated.

*Id.* This language from *Resorts* should not be taken to mean that post-confirmation jurisdiction over cases brought by litigation trusts has become any less certain. *Resorts* favorably cited two cases where such jurisdiction was upheld, including one involving the very same *Resorts* litigation trust. *Id.* at 166–67 (citing *Bergstrom v. Dalkon Shield Claimants Trust (In re A.H. Robins Co.)*, 86 F.3d 364, 372–73 (4th Cir.1996) (upholding post-confirmation jurisdiction over a professional fees dispute between a litigation trust and attorneys representing claimants on the trust); and *In re Resorts Int'l*, 199 B.R. 113, 118–19 (Bankr.D.N.J.1996) (upholding post-confirmation jurisdiction over a dispute between a litigation trust and a debtor regarding the allocation of accrued interest)).

### E. The Proceeds of the Claims Will Benefit the Creditors

The plaintiff's last point in arguing that the nexus between the Claims and the bankruptcy case is sufficiently close to warrant jurisdiction is that the proceeds from the Claims, if any, will go to the creditors. The defendants claim that this argument was rejected in *Resorts* when the court said that "the potential to increase assets of the Litigation Trust and

its beneficiaries does not necessarily create a close nexus sufficient to confer 'related to' bankruptcy court jurisdiction post-confirmation." *In re Resorts*, 372 F.3d at 171. However, the court in *AstroPower* noted that this language from *Resorts*

> does not mean that a sufficiently close nexus might not exist on different facts. Among other things, the Third Circuit pointed to the post-confirmation nature of the dispute and its unrelatedness to any provision of the chapter 11 plan in the *Resorts* case as factors attenuating any nexus with the bankruptcy proceeding.

*In re AstroPower*, 335 B.R. at 324.

Whether jurisdiction is appropriate when the only connection to the bankruptcy case is the possibility of increasing the creditors' recovery is an issue that this Court need not resolve. The fact that the Plan provided for the retention of jurisdiction for the explicit purpose of pursuing these pre-petition claims is sufficient to warrant jurisdiction. *Id.* at 325.

The defendants additionally argue that even if the plaintiff prevails on the Claims it will only mean a relatively small benefit for the creditors because the amount in question is so small in comparison to the total amount to be distributed. (Adv.Doc. # 106, pp. 2, 7, 9–10). Whereas the plaintiff seeks to recover $3.9 million, the defendants claim that as of April 2006 approximately $477 million had been distributed to creditors against unsecured claims of over $3.1 billion. While $3.9 million may only be a small percentage of $3.1 billion, it is by no means a small claim. Moreover, the defendants have failed to point to any authority that suggests that jurisdiction should hinge on the amount of the potential recovery. Indeed, it may be counter-

740

productive to find that there is no jurisdiction in cases involving small potential recoveries because plaintiffs with less to gain would then have to incur the expense of going to numerous foreign jurisdictions or else refrain from pursuing small recoveries.

### CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss the complaint for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure is **denied**.