465 B.R. 384 (2012)
In re MPC COMPUTERS, LLC, et al., Debtors.
The Liquidating Trustee of the MPC Liquidating Trust, Plaintiff,
v.
Granite Financial Solutions, Inc., d/b/a Granite Data Solutions, Defendant.
Bankruptcy No. 08-12667 (PJW). Adversary No. 10-54299 (PJW).
United States Bankruptcy Court, D. Delaware.
February 7, 2012.
*386 Howard A. Cohen, Drinker Biddle & Reath LLP, Wilmington, DE, Mark S. Indelicato, Edward L. Schnitzer, Hahn & Hessen LLP, New York, NY, for the MPC Liquidating Trust.
Frederick B. Rosner, Scott J. Leonhardt, Julia Klein, The Rosner Law Group LLC, Wilmington, DE, for Granite Financial Solutions, Inc. d/b/a Granite Data Solutions.

MEMORANDUM OPINION
PETER J. WALSH, Bankruptcy Judge.
This opinion is with regard to Granite Financial Solutions, Inc.'s ("Defendant") motion to dismiss (the "Motion") this adversary proceeding. (Doc. # 19.) Defendant filed the Motion challenging this Court's subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1).[1] For the reasons described below, I will deny the Motion.[2]

Background
The principal facts in this case are undisputed. In November 2008, MPC Computers and its subsidiaries (collectively the "Debtors") filed voluntary petitions under chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101 et seq. (Case No. 08-12667 (PJW).) On November 4, 2010, while the bankruptcy case was still pending, Debtors filed this action against Defendant for breach of contract and unjust enrichment. (Doc. # 1.) The claims arose from Defendant's alleged failure to pay for goods shipped by Debtors before the bankruptcy petitions were filed. (Compl. ¶¶ 8-26.)
On March 4, 2011, this Court entered an order (the "Confirmation Order") confirming Debtors' Second Amended Plan of Liquidation (the "Plan"). (Case No. 08-12667 (PJW), Docs. # 1218 & 1344.) The Plan provides for the creation of the MPC Liquidating Trust ("Trust," or as named in the Plan, "Liquidating Trust") pursuant to an accompanying Liquidating Trust Agreement ("Trust Agreement"). (Case No. 08-12667 (PJW), Doc. # 1341.) Specifically, the Plan "effects a transfer of all of the Debtors' Assets[3] and liabilities into the newly formed Liquidating Trust created *387 for the purposes, among others, of making distributions to the Holders of Allowed Claims and Interests, pursuing Causes of Action, and otherwise completing the liquidation of the Estates." (Plan, at 1.) The Plan further provides that "Debtors and the [Official Committee of Unsecured Creditors] will form the Liquidating Trust to administer certain post-confirmation responsibilities under the Plan, including but not necessarily limited to, those responsibilities associated with the pursuit and collection of Litigation Claims[4] [and] Causes of Action." (Id. at 19.) Also on the effective date, Debtors were to "transfer, assign and deliver to the Liquidating Trust, the Liquidating Trust Assets[5] as specified in the Liquidating Trust Agreement." (Id. at 20.) The Trust Agreement, for its part, provides that "[t]he Debtors hereby transfer, assign, and deliver to the MPC Liquidating Trust all of their right, title, and interest in the Trust Assets to the extent provided for in the Confirmation Order free and clear of any lien, Claim or interest in such property except as provided in the Plan." (Trust Agreement § 1.1(a).) The Confirmation Order approved the Trust Agreement. (Confirmation Order, at 11-12 ¶¶ 1, 4.)
Additionally, the Confirmation Order provides for the automatic substitution of the Liquidation Trustee (herein "Plaintiff") as plaintiff in the place of Debtors and/or the Official Committee of Unsecured Creditors "with respect to any and all pending Causes of Action." (Confirmation Order, at 13 ¶ 6.) Consequently, the caption on this adversary proceeding was changed to: "The Liquidating Trustee of the MPC Computers Liquidating Trust v. Granite Financial Solutions, Inc. d/b/a Granite Data Solutions, Inc." (Doc. # 12.)

Jurisdiction
A court has jurisdiction to determine whether or not it has subject matter jurisdiction over a proceeding. In re BWI Liquidating Corp., 437 B.R. 160, 163 (Bankr.D.Del.2010) (citing Chicot Cnty. Drainage Dist. v. Baxter State Bank, 308 U.S. 371, 376-77, 60 S.Ct. 317, 84 L.Ed. 329 (1940)).

Standard of Review
A court may treat a motion to dismiss under Rule 12(b)(1) as a facial attack or a factual attack on subject matter jurisdiction. See In re SemCrude, L.P., 428 B.R. 82, 93 (Bankr.D.Del.2010) (citing Gould Elecs. Inc. v. United States, 220 F.3d 169, 176 (3d Cir.2000)). In reviewing a facial attack, which is a challenge to the sufficiency of pleading in the complaint, the court must "`accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff.'" Id. (citing In re *388 Kaiser Grp. Int'l Inc., 399 F.3d 558, 561 (3d Cir.2005)). The factual attack challenges "the existence of subject matter jurisdiction in fact, quite apart from any pleadings." Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). "In reviewing a factual attack, a court may consider evidence outside the pleadings." Gould, 220 F.3d at 176. It is the plaintiff who bears the burden of proving that jurisdiction exists. Mortensen, 549 F.2d at 891.
Defendant here does not raise a challenge to the sufficiency of Plaintiff's pleadings, but rather attacks the factual grounds for jurisdiction. As Defendant has submitted as exhibits the Plan, the Trust Agreement, and the Confirmation Order, and Plaintiff has had the opportunity to submit his own evidence in response, I will treat this motion as a factual attack.

Discussion
Defendant here makes three arguments in support of dismissal for lack of subject matter jurisdiction. First, Defendant argues that the "Bankruptcy Court's entry of judgment in this matter would be the unconstitutional exercise of `judicial power'" since Plaintiff's claims are state law "suits at common law and clearly could exist outside the context of bankruptcy." (Def.'s Br., at 10.) Defendant cites the recent Supreme Court decision Stern v. Marshall, ___ U.S. ___, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011), to bolster its argument. (Id. at 13-18.) Next, Defendant argues that because this action is being adjudicated post-confirmation, this Court does not have jurisdiction over the matter under the standard established in Binder v. Price Waterhouse & Co. LLP (In re Resorts Int'l, Inc.), 372 F.3d 154 (3d Cir. 2004). (Id. at 18-21.) Lastly, Defendant asserts that this Court cannot hear the action because Defendant has demanded a jury trial, and such a trial cannot be conducted in this Court. (Id. at 23-25.) I will address each of these arguments in turn.

Applicability of Stern v. Marshall
In his opposition brief to Defendant's Motion, Plaintiff responds that Stern, upon which Defendant heavily relies, did not address the bankruptcy court's subject matter jurisdiction, but rather the court's ability to enter a final, binding judgment in a narrow category of state law actions. (Pl.'s Opp'n, at 4-7.) I agree with Plaintiff; as the Court itself said in Stern, the holding in that case was a narrow one. Stern, 131 S.Ct. at 2620 ("We do not think the removal of counterclaims such as [the debtor's] from core bankruptcy jurisdiction meaningfully changes the division of labor in the current statute; we agree with the United States that the question presented here is a `narrow' one.").
The narrow question that the Stern Court was asked to determine involved a two-part inquiry: "(1) whether the Bankruptcy Court had the statutory authority under 28 U.S.C. § 157(b) to issue a final judgment on [the debtor's] counterclaim; and (2) if so, whether conferring that authority on the Bankruptcy Court is constitutional." Stern, 131 S.Ct. at 2600 (emphasis added). After a lengthy analysis of 28 U.S.C. § 157 and Article III of the Constitution, the Court held that "although the Bankruptcy Court had the statutory authority to enter judgment on [the bankruptcy estate's state law counterclaim], it lacked the constitutional authority to do so." Id. at 2601 (emphasis added). In so holding, the Court in no way disturbed the bankruptcy court's jurisdiction to hear certain matters, which is a separate issue from the court's power to enter a final judgment.
Section 1334 of title 28 of the United States Code establishes the district court's bankruptcy jurisdiction. Section 1334 provides *389 that "the district courts shall have original and exclusive jurisdiction of all cases under title 11" and "shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(a) & (b) (2005). Section 157 of title 28 permits the district courts to refer to the bankruptcy judges in the district "any and all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 157(a).[6] Where matters are so referred, a bankruptcy judge "may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11 . . . and may enter appropriate orders and judgments." 28 U.S.C. § 157(b)(1). Section 157 also provides for the bankruptcy court's ability to hearbut not render a final judgment ina proceeding that is non-core but still related to a bankruptcy case:
A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.
28 U.S.C. § 157(c)(1).
The question pondered by the Supreme Court in Stern, whether the bankruptcy judge had the power to enter a final judgment in a state law counterclaim by the estate, is entirely separate from the question of whether a bankruptcy judge has jurisdiction to hear a matter without entering a final judgment. Stern, 131 S.Ct. at 2597 ("Section 157 allocates the authority to enter final judgment between the bankruptcy court and the district court. That allocation does not implicate questions of subject matter jurisdiction.") (citation omitted). The constitutionality of § 1334, the provision governing bankruptcy jurisdiction, was not at issue in Stern. Burtch v. Huston (In re USDigital, Inc.), Adv. No. 09-50469, 2011 WL 6382551, at *1 (Bankr.D.Del. Dec. 20, 2011) ("Stern in no way limits the bounds of a bankruptcy court's subject matter jurisdiction. At the very least the bankruptcy court must have `related to' jurisdiction."); Fairchild Liquidating Trust v. New York (In re Fairchild Corp.), 452 B.R. 525, 530 n. 14 (Bankr.D.Del.2011) ("The issue in Stern v. Marshall was when, under the United States Constitution, the bankruptcy court could enter a final judgment as opposed to proposed findings of fact and conclusions of law in a case where subject matter jurisdiction existed under 28 U.S.C. § 1334(a). As such, Stern v. Marshall is not a case about subject matter jurisdiction.") (citation omitted); In re Salander O'Reilly Galleries, 453 B.R. 106, 117 (Bankr.S.D.N.Y.2011) ("Nowhere in [N. Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982)], Granfinanciera [S.A. v. Nordberg, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989)], or Stern does the Supreme Court rule that the bankruptcy court may not rule with respect to state law when determining a proof of claim in the bankruptcy, or when deciding a matter directly and conclusively related to the bankruptcy."). See also Ace Am. Ins. Co. v. DPH Holdings Corp. (In re DPH Holdings Corp.), No. 10-4170-bk, 2011 WL *390 5924410, at *1 (2d Cir. Nov. 29, 2011) ("The [defendants] argue that the Bankruptcy Court lacks jurisdiction because the adversary proceeding is not a core or a non-core proceeding. Whether a proceeding is core or non-core is beside the point for determining jurisdiction because `[t]hat allocation [of core and non-core] does not implicate questions of subject matter jurisdiction.' So long as a proceeding is one or the other, the Bankruptcy Court possessed subject-matter jurisdiction.") (quoting Stern, 131 S.Ct. at 2607); S. Elec. Coil, LLC v. First Merit Bank, No. 11 C 6135, 2011 WL 6318963, at *3 (N.D.Ill. Dec. 16, 2011) ("Further, the Stern Court, albeit in dicta, stated that its holding did not preclude the bankruptcy court from hearing counterclaims and proposing findings of fact.") (citing Stern, 131 S.Ct. at 2620).
Defendant has raised a challenge to this Court's subject matter jurisdiction, that is, the ability to hear the case at all, quite apart from the ability to enter a final judgment. Defendant's reliance on Stern is misplaced, as the jurisdictional inquiry is separate from the core/non-core inquiry that the Supreme Court considered in Stern.

This Court's Related To Jurisdiction
The key inquiry here is whether this Court has at least "related to" jurisdiction under § 1334, or in other words, whether this matter is sufficiently "related to" the Debtors' bankruptcy case. On this matter, Defendant correctly notes that in the post-confirmation context, the bankruptcy court's jurisdiction is somewhat narrower than in the pre-confirmation context. (Def.'s Br. at 18-20) (citing In re Resorts Int'l, 372 F.3d 154). I am unpersuaded, however, by Defendant's application of Resorts and its progeny to the facts in this case.
Resorts addressed the question of whether the bankruptcy court had jurisdiction over a post-confirmation dispute between the estate litigation trustee and the trustee's accounting firm, Price Waterhouse. Binder, the litigation trustee, sued Price Waterhouse for malpractice, alleging that Price Waterhouse had made several errors in providing tax and accounting advice to the trustee. 372 F.3d at 158. Price Waterhouse had been retained by the trustee after the plan of the debtor, Resorts International, Inc., had been confirmed. Id. The plan provided for the formation of the litigation trust, and for the transfer of many of the debtor's assets and several litigation claims to the trust. Id.
In examining the bankruptcy court's jurisdiction over the malpractice action, the Third Circuit noted first that "[a]fter confirmation of a reorganization plan, retention of bankruptcy jurisdiction may be problematic." Id. at 164-65. The court stated that the traditional test for whether a bankruptcy court had at least "related to" jurisdiction turned on whether "the dispute creates `the logical possibility that the estate will be affected.'" Id. at 165 (quoting In re Federal-Mogul Global, Inc., 300 F.3d 368, 380 (3d Cir.2002)). Where the plan has been confirmed, however, the estate no longer exists, so this test is not to be applied literally. See id. Looking to other cases where jurisdiction was preserved in the post-confirmation context, the Third Circuit held that "the essential inquiry appears to be whether there is a close nexus to the bankruptcy plan or proceeding sufficient to uphold bankruptcy court jurisdiction over the matter." Id. at 166-67. Where there is a continuing trust, like the litigation trust formed in the Resorts International bankruptcy, "[m]atters that affect the interpretation, implementation, consummation, execution, or administration of the confirmed *391 plan will typically have the requisite close nexus." Id. at 167. The court acknowledged that "[t]o a certain extent, litigation trusts by their nature maintain a close connection to the bankruptcy even after the plan has been confirmed." Id. The key inquiry, then, is "how close a connection warrants post-confirmation jurisdiction" such that the bankruptcy jurisdiction, intended to be limited by Congress in § 1334, "would not raise the specter of `unending jurisdiction' over continuing trusts." Id.
Looking to the facts of the adversary action before it, the Third Circuit held that the proceeding "lack[ed] a close nexus to the bankruptcy plan or proceeding and affect[ed] only matters collateral to the bankruptcy process." 372 F.3d at 169. Further,
[t]he resolution of these malpractice claims will not affect the estate; it will have only incidental effect on the reorganized debtor; it will not interfere with the implementation of the Reorganization Plan; though it will affect the former creditors as Litigation Trust beneficiaries, they no longer have a close nexus to [the] bankruptcy plan or proceeding because they exchanged their creditor status to attain rights to the litigation claims....
Id. The court also emphasized that "the potential to increase assets of the Litigation Trust and its beneficiaries does not necessarily create a close nexus sufficient to confer `related to' bankruptcy court jurisdiction post-confirmation." Id. at 170. Finally, while the plan had provided for the retention of bankruptcy jurisdiction over all actions arising from or connected to the trust agreement, the Third Circuit held that "jurisdictional retention plans cannot confer jurisdiction greater than that granted under 28 U.S.C. § 1334 or 28 U.S.C. § 157." (Id. at 169.) As a result, the bankruptcy court did not have jurisdiction over the malpractice action. See id. at 170-71.
Although Defendant relies heavily on Resorts, I note a key factual distinction. In Resorts, the claim for malpractice arose and the action was commenced after confirmation of the plan. 372 F.3d at 158. In contrast, the action before me was brought initially by Debtors, several months prior to confirmation. As a result, this cause of action belonged to Debtors and was transferred to the Trust under the Plan. (Plan, at 19, 20; Trust Agreement § 1.1.) Moreover, the Plan specifically contemplated the continuation of this and other causes of action:
Except as otherwise provided in the Plan, the Liquidating Trust shall retain all rights on behalf of the Debtors and the Estates to commence and pursue, as appropriate, in any court or other tribunal including, without limitation, in an adversary proceeding filed in one or more of the Debtors' Chapter 11 Cases, any and all Causes of Action, whether such Causes of Action accrued before or after the Petition Date, including, but not limited to, the actions specified herein.
(Plan, at 29.) Likewise, the Confirmation Order provides that
on the Effective Date, the Liquidating Trustee shall automatically be deemed to be substituted as plaintiff in the place of the Committee and/or the Debtors with respect to any and all pending Causes of Action (the "Pending Litigation"). The Liquidating Trustee shall succeed to all rights, benefits and protections of the Committee and/or the Debtors with respect to all such Pending Litigation and shall have standing after the Effective Date to pursue, compromise *392 and settle all claims asserted in the Pending Litigation.
(Confirmation Order, at 13 ¶ 6.)
The distinction in timing is significant. Noting this factual difference, Plaintiff urges me to reject the "close nexus" test and instead apply the holding of Pacor, Inc. v. Higgins, 743 F.2d 984 (3d Cir.1984) (overruled on other grounds). Pacor stated the oft-cited test for whether a bankruptcy court has "related to" jurisdiction over a proceeding before confirmation: "The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." 743 F.2d at 994. Plaintiff argues that since this action arose pre-confirmation, I should apply the Pacor "conceivable effect" test rather than the Resorts "close nexus" test. (Pl.'s Br., at 9-10.) While I note that the case upon which Plaintiff relies, IT Litig. Trust v. D'Aniello (In re IT Group, Inc.), Civ.A. 04-1268-KAJ, 2005 WL 3050611 (D.Del. Nov. 15, 2005), clearly applies the "close nexus" test even though the cause of action was commenced pre-confirmation[7], I agree that the Pacor test is the appropriate test. A later Third Circuit case, Geruschat v. Ernst Young LLP (In re Seven Fields Dev. Corp.), 505 F.3d 237 (3d Cir. 2007), clarified the court's previous position in Resorts:
After our present consideration of Resorts, we are satisfied that the "close nexus" test is applicable to "related to" jurisdiction over any claim or cause of action filed post-confirmation, regardless of when the conduct giving rise to the claim or cause of action occurred. We reach this conclusion because in Resorts, though we were dealing with post-confirmation rather than pre-confirmation conduct, we focused on the point of time in which the cause of action was instituted: whether it was filed in the "post-confirmation stage," i.e., the "post-confirmation context."
505 F.3d at 264-65 (emphasis added). Since Seven Fields, this Court has noted the limitation of the Resorts test to actions commenced after confirmation. In re SemCrude, 428 B.R. at 97 ("[Seven Fields and Resorts] limit application of the `close nexus' test to a `claim or cause of action filed post-confirmation.'") (citing Seven Fields, 505 F.3d at 265). Therefore, I will apply the Pacor "conceivable effect" test.
Under Pacor, "[a]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." 743 F.2d at 994. See also In re W.R. Grace & Co., 591 F.3d 164, 172 (3d Cir.2009). In a case applying the Pacor test to a legal malpractice action commenced by the debtor pre-confirmation but prosecuted post-confirmation, the District Court for the District of New Jersey held that the bankruptcy court had "related to" jurisdiction over the proceeding where it was "clearly contemplated in the disclosure statement, in the plan and in various motions." Jazz Photo Corp. v. Dreier LLP, No. Civ.A. 05-5198DRD, 2005 WL 3542468, at *5 (D.N.J. Dec. 23, 2005).
The action in the case before me meets this standard, as the Plan, Trust Agreement, and Confirmation Order clearly contemplated this proceeding as a *393 means of implementing the Plan. Here, in the subsection titled "Means for Implementation of the Plan," the Plan provides that the Liquidating Trust will be formed "to administer certain post-confirmation responsibilities under the Plan, including... those responsibilities associated with the pursuit and collection of Litigation Claims, Causes of Action, and the reconciliation and payment of Claims." (Plan, at 19.) Included in the types of actions that the Trustee is permitted to pursue are "all actual actions or potential actions ... against customers, for Accounts Receivable." (Id. at 30.) The Trust Agreement further clarifies that the Trust was "created to fulfill the obligations set forth in the Plan and is for the benefit of the Holders of Allowed Claims in Class 4 under the Plan." (Trust Agreement, at 1.) Moreover, the purpose of the Trust is stated as, inter alia, "pursuing collection on the Litigation Claims and Causes of Action." (Id. § 3.1.) Plaintiff, as liquidating trustee, was given the power to "prosecute for the benefit of the MPC Liquidating Trust all Claims, rights and Litigation Claims or Causes of Action transferred to the MPC Liquidating Trust whether or not such suits are brought in the name of the MPC Liquidating Trust, the Debtors or otherwise for the benefit of the holders of Beneficial Interests." (Id. § 5.2.) Likewise, the Confirmation Order provides that "the Liquidating Trustee shall succeed to all rights, benefits and protections of the Committee and/or the Debtors with respect to all ... Pending Litigation." (Confirmation Order, at 13 ¶ 6.) Finally, Article XII of the Plan specifically provides for the retention of this Court's jurisdiction over "[a]ll Causes of Action, Avoidance Actions and other suits and adversary proceedings to recover assets of the Liquidating Trust, as successor-in-interest to the Debtors and property of the Estates ... and to adjudicate any and all other Causes of Action, Avoidance Actions, suits, adversary proceedings, motions, applications and contested matters that may be commenced or maintained pursuant to the Chapter 11 Case or this Plan." (Plan, at 45 ¶ 13.) The Confirmation Order similarly retains jurisdiction over matters "relating to the Cases or the Plan, including, without limitation, all categories specifically set forth in Article XII of the Plan." (Confirmation Order, at 19 ¶ 20.) It is clear that the adversary action against Defendantan action for breach of contract and unjust enrichment to recover accounts receivable arising from Defendant's alleged failure to pay for goods and/or services shipped by Debtorsfalls into the specific categories of Pending Litigation and Litigation Claims that are vital to the implementation of the Plan and administration of the Trust. The Trust was established for the purpose of fulfilling the obligations to Debtors' creditors under the Plan, in part by pursuing causes of action owned by Debtors and transferred to the Trust. The Plan clearly contemplated the maintenance of this action, and thus I hold that it is related to the Debtors' bankruptcy case under Pacor and subsequent cases.
Even under the heightened "close nexus" test, courts have focused on whether the action at issue was specifically identified in and contemplated by the plan. See, e.g., In re Fairchild Corp., 452 B.R. at 532; In re BWI Liquidating Corp., 437 B.R. at 166; In re EXDS, Inc., 352 B.R. 731, 735-38 (Bankr.D.Del.2006); In re AstroPower Liquidating Trust, 335 B.R. 309, 324-25 (Bankr.D.Del.2005); In re Insilco Techs., 330 B.R. 512, 525 (Bankr.D.Del. 2005); In re LGI, Inc., 322 B.R. 95, 102-04 (Bankr.D.N.J.2005). This Court has found *394 an insufficient nexus where the plan describes only a broad category of causes of action that encompasses every possible claim[8], and has found a close nexus where the plan describes the facts from which the cause of action arose.[9] More generally, the AstroPower court held that "where ... the Plan specifically describes an action over which the court had `related to' jurisdiction pre-confirmation and expressly provides for the retention of such jurisdiction to liquidate that claim for the benefit of the estate's creditors, there is a sufficiently close nexus with the bankruptcy proceeding to support jurisdiction post-confirmation." Id. at 325.
The language in the Plan, Trust Agreement, and Confirmation Order is sufficiently specific to convey the importance of the action to the implementation of the Plan. The Plan and Confirmation Order specifically provide for the retention of any pending causes of action commenced by Debtors and any actions against customers. The prosecution of these claims is clearly mentioned as a means of implementation, and thus unlike the malpractice claim in Resorts, the action at hand is not a "matter[] collateral to the bankruptcy process." 372 F.3d at 169. Thus, even under the more stringent "close nexus" test, this Court has at least "related to" jurisdiction over this action.

Defendant's Demand for a Jury Trial
Defendant argues that its Motion should be granted because it has demanded a jury trial, which this Court has no authority to conduct. (Def.'s Br., at 23-25.) Whether Defendant is entitled to a jury trial has no bearing on this Court's subject matter jurisdiction and thus is irrelevant at this stage of the proceeding. Further, the proper mechanism to address this issue is through a motion to withdraw the reference. I note, however, that where a defendant is entitled to a jury trial, it is the practice of the District Court when addressing a motion to withdraw the reference, to keep proceedings related to the bankruptcy case in this Court until the matter is ready for trial. See, e.g., In re KB Toys, Inc., No. Civ.A. 06-363-KAJ, 2006 WL 1995585, at *1 (D.Del. July 17, 2006); In re Big v. Holding Corp., Civ.A. 01-233(GMS), 2002 WL 1482392, at *5 (D.Del. July 11, 2002).

Conclusion
For the foregoing reasons, I hold that this Court has subject matter jurisdiction over this action and I will accordingly deny Defendant's Motion to dismiss.

ORDER
For the reasons set forth in the Court's memorandum opinion of this date, Defendant's motion (Doc. # 19) to dismiss for *395 lack of subject matter jurisdiction is denied.
NOTES
[1] Fed.R.Civ.P. 12 is made applicable to this adversary proceeding by Fed. R. Bankr.P. 7012.
[2] The plaintiff in this case, the Liquidating Trustee of the MPC Liquidation Trust, has also filed a motion to strike an answer filed by Defendant pro se and to request a default judgment for Defendant's failure to answer. (Doc. #18.) As Defendant has now filed a responsive pleading, i.e. this Motion to dismiss, I consider the motion to strike to be mooted.
[3] As used in the Plan, the term "Assets" includes "all assets of the Debtors, of any nature whatsoever, including, without limitation, all property of the Estates under and pursuant to Bankruptcy Code § 541; Cash; Causes of Action, including Avoidance Actions; rights; interests; and property, real and personal, tangible and intangible." (Plan, at 3 ¶ 10.)
[4] The Plan defines "Litigation Claims" as "all Avoidance Actions and other Causes of Action of any one or more of the Debtors." (Plan, at 8 ¶ 76.) "Cause of Action" is defined, without limitation, as "all claims as defined in section 101(5) of the Bankruptcy Code, actions, choses in action, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, controversies, agreements, promises, variances, trespasses, damages, judgments, third-party claims, counterclaims and cross claims . . . of the Debtors, the Debtors in possession and/or the Estates against any Person based on law or equity, including, but not limited to, under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted, known or unknown." (Plan, at 4 ¶ 22.)
[5] "`Liquidating Trust Assets' means all assets of the Debtors' Estates that will be transferred, assigned and delivered to the Liquidating Trust as specified in the Liquidating Trust Agreement." (Plan, at 8 ¶ 74.)
[6] There is a standing order in this District for the automatic reference of all title 11 proceedings to the bankruptcy judges of this District.
[7] See IT Group, 2005 WL 3050611, at *7 ("Because this matter affects the implementation, consummation, and execution of the bankruptcy plan, there is a close nexus to the bankruptcy sufficient to satisfy the standard set in Resorts.") (emphasis added).
[8] See Insilco, 330 B.R. at 525 (no jurisdiction where plan broadly defined "Rights of Action" as "All actions, causes of action, suits, rights of action ... arising under any theory of law or equity, including, without limitation, the Bankruptcy Code, including the Avoidance Actions and all claims against Creditors or Holders of Interests, parties having dealings, relationships or transactions with or related to the Debtors, any party named or identified in the Schedules or any pleadings filed in the Chapter 11 Cases (including, but not limited to, officers and directors of the Debtors and parties other than the Released Lender parties and Released Employees), in each case held by or in favor of any of the Debtors or their estates whether or not commenced as of the Effective Date, but excluding any of the foregoing which (i) are Released Claims or (ii) related to the recovery of Settlement Proceeds, including the Star Services Litigation and the Tax Refunds.").
[9] See AstroPower, 335 B.R. at 324 (jurisdiction where plan provided for the liquidating trust to prosecute "causes of action arising out of or in connection with the Debtor's sale of stock in" the defendant corporation.).