In re DBSI, INC., et al., Debtors.

James R. Zazzali, as Trustee for the Debtors' Jointly–Administered Chapter 11 Estates and/or as Litigation Trustee for the DBSI Estate Litigation Trust, Plaintiff,

v.

1031 Exchange Group, et al., The Blind Gallery and John Doe 1–10, Air Performance Service, Inc. and John Doe 1–10, Atlas Van Lines, Inc., and John Doe 1–10, Hoefer Wysocki Architects LLC and John Doe 1–10, IBF Group and John Doe 1–10, Brooks & Amaden, Inc. and John Doe 1–10, New West Paving and John Doe 1–10, Defendants.

Bankruptcy No. 08–12687(PJW).

Adversary Nos. 10–54648(PJW), 10–53991(PJW), 10–53918(PJW), 10–54827(PJW), 10–54882(PJW), 10–54899(PJW), 10–55219(PJW), 10–54995(PJW).

United States Bankruptcy Court, D. Delaware.

April 12, 2012.

Christopher Viceconte, Natasha M. Songonuga, Gibbons P.C., Stephen W Spence, Phillips, Goldman & Spence, Wilmington, DE, Dale E. Barney, Mark B. Conlan, Gibbons P.C., Newark, NJ, Steven J. Mitnick, Mitnick & Malzberg, P.C., Frenchtown, NJ, for Plaintiff.

James S. Yoder, White and Williams LLP, John D. Demmy, Esq., Stevens & Lee, P.C., Jami B. Nimeroff, Brown, Stone, Nimeroff, LLC, Wilmington, DE, for Defendants.

John Doe 1–10, pro se.

## MEMORANDUM OPINION

PETER J. WALSH, Bankruptcy Judge.

This opinion is with regard to motions to dismiss (the "Motions") filed by certain defendants (the "Movants") in several ad-

versary proceedings.[1] (Adv. Proc. No. 10–54648(PJW), Doc. # 146; Adv. Proc. No. 10–53991(PJW), Doc. # 15; Adv. Proc. No. 10–53918(PJW), Doc. # 17; Adv. Proc. No. 10–54827(PJW), Doc. # 15; Adv. Proc. No. 10–54882(PJW), Doc. # 16; Adv. Proc. No. 10–54899(PJW), Doc. # 17; Adv. Proc. No. 10–55219(PJW), Doc. # 16; Adv. Proc. No. 10–54995(PJW), Doc. # 21.)[2] Movants have styled their Motions a "Motion to Dismiss in the Absence of Article III Authority to Adjudicate" and argue that this Court "lacks the authority to adjudicate this proceeding per *Stern v. Marshall*, —— U.S. ——, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011), *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), and 28 U.S.C. § 157(e)." (Adv. Proc. No. 10–54648, Doc. # 146, at 1.) For

the reasons described below, I will deny the Motions.

## Background

In November 2008, DBSI Inc. ("DBSI") and several of its affiliates (collectively "Debtors") filed for bankruptcy protection under chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* Debtors' plan of liquidation was confirmed in October 2010, naming James R. Zazzali ("Trustee") as litigation trustee of the DBSI Estate Litigation Trust. (Case No. 08–12687(PJW), Doc. # 5924.)

Shortly after his appointment, Trustee commenced these adversary actions. In the 1031 Exchange Action, Trustee is seeking the avoidance and recovery of fraudulent transfers pursuant to 11 U.S.C. §§ 544[3], 548[3], 550[4], and 551[5], and assert-

---

**1.** The relevant adversary actions are: Zazzali v. 1031 Exchange Group, et al., Adv. Proc. No. 10–54648(PJW) [the "1031 Exchange Action"]; Zazzali v. The Blind Gallery and John Doe 1–10, Adv. Proc. No. 10–53991(PJW) [the "Blind Gallery Action"]; Zazzali v. Air Performance Service, Inc. and John Doe 1–10, Adv. Proc. No. 10–53918(PJW) [the "Air Performance Action"]; Zazzali v. Atlas Van Lines, Inc. and John Doe 1–10, Adv. Proc. No. 10–54827(PJW) [the "Atlas Van Action"]; Zazzali v. Hoefer Wysocki Architects LLC and John Doe 1–10, Adv. Proc. No. 10–54882(PJW) [the "Hoefer Action"]; Zazzali v. IBF Group and John Doe 1–10, Adv. Proc. No. 10–54899(PJW) [the "IBF Group Action"]; Zazzali v. Brooks & Amaden, Inc. and John Doe 1–10, Adv. Proc. No. 10–55219(PJW) [the "Brooks & Amaden Action"]; Zazzali v. New West Paving and John Doe 1–10, Adv. Proc. No. 10–54995(PJW) [the "New West Action"].

**2.** Because the Motions are substantially similar in each case, unless otherwise noted, all references to docket item numbers will be to the 1031 Exchange Action (Adv. Proc. No. 10–54648).

**3.** "[T]he trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under sec-

tion 502 of this title or that is not allowable only under section 502(e) of this title." 11 U.S.C. § 544(b)(1) (1998).

**3.** Section 548 provides in relevant part:

(a)(1) The trustee may avoid any transfer ... of an interest of the debtor in property, or any obligation ... incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
(A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or
(B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
(ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
(II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
(III) intended to incur, or believed that the debtor would incur, debts that would be

ing claims for declaratory relief related to federal securities laws, unjust enrichment, rescission of certain agreements between Debtors and defendants, and the disallowance of claims against the bankruptcy estate pursuant to 11 U.S.C. § 502 [6]. In the Air Performance Action and the Blind Gallery Action, Trustee asserts claims for the avoidance and recovery of preferential transfers under 11 U.S.C. § 547 [6], fraudulent transfers under § 548, and post-petition transfers under § 549 [7], recovery of the avoided transfers under §§ 550 and 551, and disallowance of claims under § 502. In the remaining actions—the Atlas Vans Action, Brooks & Amaden Action, Hoefer Action, IBF Group Action, and New West Action—Trustee asserts avoidance and recovery claims under §§ 544, 547, 548, 550, and 551, as well as unjust enrichment premised on the avoidance actions.

## Jurisdiction

This Court has jurisdiction over these adversary actions pursuant to 28 U.S.C. §§ 1334(b) and 157(a). Section 1334 provides that the district courts have jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11," and section 157 permits the district court to refer any such civil proceedings to the bankruptcy court. 28 U.S.C. §§ 1334(b) & 157(a) (2005).

Section 157 also provides that "[b]ankruptcy judges may hear and determine all

---

beyond the debtor's ability to pay as such debts matured; or

(IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.
11 U.S.C. § 548(a) (2005).

**4.** "[T]o the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee." 11 U.S.C. § 550(a) (1994).

**5.** "Any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title ... is preserved for the benefit of the estate but only with respect to property of the estate." 11 U.S.C. § 551 (1978).

**6.** "[T]he court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under sec-

tion 522(i), 542, 543, 550, or 553 of this title." 11 U.S.C. § 502(d) (2005).

**6.** Section 547 permits a trustee to

avoid any transfer of an interest of the debtor in property—
(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
(3) made while the debtor was insolvent;
(4) made—
(A) on or within 90 days before the date of the filing of the petition; or
(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
(5) that enables such creditor to receive more than such creditor would receive if—
(A) the case were a case under chapter 7 of this title;
(B) the transfer had not been made; and
(C) such creditor received payment of such debt to the extent provided by the provisions of this title.
11 U.S.C. § 547(b) (2005).

**7.** "[T]he trustee may avoid a transfer of property of the estate (1) that occurs after the commencement of the case; and (2)(A) that is authorized only under section 303(f) or 542(c) of this title; or (B) that is not authorized under this title or by the court." 11 U.S.C. § 549(a) (2005).

cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11 … and may enter appropriate orders and judgments." 28 U.S.C. § 157(b)(1) (2005). Where the matter is not a core proceeding but is otherwise related to a case under title 11, the bankruptcy court may hear the proceeding but must submit proposed findings of fact and conclusions of law to the district court for de novo review. 28 U.S.C. § 157(c)(1) (2005).

This Court has already determined that these matters involve both core proceedings and non-core proceedings.

### Discussion

As the Motions were filed in conjunction with motions to withdraw the reference, Movants ask this Court to dismiss these proceedings if the District Court does not grant the motions to withdraw the reference. (Adv. Proc. No. 10–54648, Doc. # 147, at 3.) In support of their Motions, Movants argue that 1) under *Stern*, "a bankruptcy court, not being an Article III court, cannot adjudicate an adversary proceeding seeking to recover money from the defendant on causes of action sounding in preference or fraudulent conveyance"; and 2) under *Stern* and *Granfinanciera*, these particular adversary actions cannot be adjudicated in this Court because the Movants did not consent to bankruptcy court adjudication, intend to demand a jury trial in their answers to the complaints, and certain of the Movants did not file proofs of claim in the bankruptcy case. (*Id.* at 4.)

It is customary—and indeed, necessary—for courts to state the standard of review in evaluating a motion to dismiss. As Movants have admitted here that they have invented this "motion to dismiss for lack of authority to adjudicate" as a procedural device, there is no established standard of review to apply. Essentially, Movants are seeking to have the adversary actions dismissed entirely because, on their reading of *Stern*, this Court cannot enter final judgments in these proceedings. In so arguing, I find that Movants both misinterpret *Stern's* narrow holding and do not acknowledge the distinction between the bankruptcy court's ability to hear a proceeding and to adjudicate such proceeding.

The facts of the case and the holding in *Stern* have been discussed at length by other courts since that opinion was issued, so I will only provide a brief summary of the factual background and decision here. The *Stern* decision concerned an adversary proceeding arising in the bankruptcy case of Vickie Lynn Marshall ("Vickie"), better known as Anna Nicole Smith. Prior to the commencement of her bankruptcy case, Vickie entered into a dispute in state court with E. Pierce Marshall ("Pierce"), the son of her late husband J. Howard Marshall, over the older Marshall's estate. 131 S.Ct. at 2601. While the state court action was pending, Vickie filed for bankruptcy, and Pierce filed a complaint for defamation and a proof of claim in the bankruptcy case. *Id.* Vickie then filed a counterclaim for tortious interference, claiming that Pierce had interfered with the elder Marshall's promise to leave a large sum of money to his wife Vickie. *Id.* The bankruptcy court conducted a bench trial on the action, and entered an order in Vickie's favor. *Id.* Pierce appealed, arguing that the bankruptcy court could not enter a final order in the action, even though such a counterclaim by the estate is specifically listed as a core proceeding in 28 U.S.C. § 157(b)(2)(C). *Id.* The appeal reached the Supreme Court, which held that although there was statutory authority in § 157 for the bankruptcy court to finally adjudicate the counterclaim, Article III of the Constitution did not permit such a result. The Court concluded that "[t]he

Bankruptcy Court below lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim." *Id.* at 2620.

There has been much debate about the scope of the *Stern* decision and its effect on the division of labor between the bankruptcy courts and the district courts. In a recent opinion from this Court, Judge Gross noted that as of January 2012, there had been "in excess of 130 cases in which bankruptcy courts have addressed *Stern*" and that "the analyses and decisions [were] not consistent." *Burtch v. Seaport Capital, LLC (In re Direct Response Media, Inc.)*, 466 B.R. 626, 638 n. 7 (Bankr. D.Del.2012). As of the writing of this opinion in April 2012, there are more than 325 decisions citing *Stern.*

As Judge Gross explained in detail in *Direct Response,* courts have split between a broad interpretation of *Stern* and a narrow interpretation. *Id.* The broad interpretation holds that bankruptcy judges cannot enter final adjudications on avoidance actions because such actions are "quintessentially suits at common law" and thus must be decided by an Article III judge. *Id.* at 640 (citing *Granfinanciera,* 492 U.S. at 56, 109 S.Ct. 2782). In contrast, the narrow view restricts *Stern's* holding to its facts in that the decision "only specifically removed a debtor's state law counterclaims under § 157(b)(2)(C) ... from final adjudicatory authority of the bankruptcy court." *Id.* at 641. After an analysis of both interpretations, Judge Gross adopted the narrow interpretation and held that "*Stern* does not remove the bankruptcy courts' authority to enter final judgments on other core matters, including the authority to finally adjudicate preference and fraudulent conveyance actions." *Id.* at 644.

Though Movants cite several cases from other jurisdictions embracing the broad interpretation of *Stern*[8], I am not persuaded that I should follow these decisions. The majority opinion in *Stern* contains language that could support either the broad or the narrow interpretation. *See Burtch v. Huston (In re USDigital, Inc.),* 461 B.R. 276, 286–92 (Bankr.D.Del.2011) (listing the instances of both broadening and narrowing language). As in *Direct Response,* this Court concluded in *USDigital* that *Stern's* repeated reference to its "narrow" holding that would not "meaningfully change[ ] the division of labor" between bankruptcy and district courts meant that the narrow view is the correct view. *Id.* at 290 (citing *Stern,* 131 S.Ct. at 2619).

■ I agree with my colleagues that *Stern's* holding should be read narrowly and thus restricted to the case of a "state-law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim." 131 S.Ct. at 2620. I note also that numerous other recent decisions have agreed with the narrow interpretation. *See, e.g., Kirschner v. Agoglia (In re Refco, Inc.),* 461 B.R. 181 (Bankr.S.D.N.Y. 2011); *Fox v. Picard (In re Madoff),*– F.Supp.2d–, Nos. 10 Civ. 4652(JGK), 10 Civ. 7101(JGK), 10 Civ. 7219(JGK), 11 Civ. 1298(JGK), 11 Civ. 1328(JGK), 2012 WL 990829 (S.D.N.Y. Mar. 26, 2012). Like this Court in *Direct Response,* both the *Refco* and *Madoff* courts concluded that a fraudulent transfer action can be adjudicated by the bankruptcy court. *Direct Response,* 2012 WL 112503, at *11 ("[P]reference and fraudulent transfer claims arise both under

**8.** *Meoli v. Huntington Nat'l Bank (In re Teleservices Grp., Inc.),* Adv. No. 07–80037, 2011 WL 3610050 (Bankr.W.D.Mich. Aug. 17, 2011); *Paloian v. Am. Express Co. (In re Canopy Fin., Inc.),* 464 B.R. 770 (N.D.Ill.2011); *Samson v. Blixseth (In re Blixseth),* Adv. No. 10–00088, 2011 WL 3274042 (Bankr.D.Mont. Aug. 1, 2011).

Title 11 and in a case under Title 11 and are by definition 'core' issues under § 157(b)(2)(F) & (H) for which a bankruptcy court has authority to enter final adjudications."); *Refco*, 461 B.R. at 192 ("Given the repeated and emphatic limiting language in *Stern*, ... and the role of fraudulent transfer claims under the Bankruptcy Code, including their management and resolution ultimately by the bankruptcy courts in the context of Congress' bankruptcy scheme, Article III of the Constitution does not prohibit the bankruptcy courts' determination of fraudulent transfer claims under 11 U.S.C. §§ 544 and 548 by final judgment."); *Madoff*, 2012 WL 990829, at *12 n. 5 ("[Appellant] points to no language in *Stern* that can reasonably be interpreted as holding that the power explicitly accorded by Congress to the bankruptcy courts to enter judgment in fraudulent transfer actions ... violates Article III of the United States Constitution. The specific issue in *Stern* was the constitutional authority for a bankruptcy court to enter judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim. ...

The adjudication of fraudulent transfer and avoidance actions is a basic feature of that division of labor.") (citations omitted). Thus, I find that *Stern* is not applicable to this action, as it does not involve a state-law counterclaim by the estate. Consequently, I conclude that I can enter a final judgment on the core preference, post-petition transfer, fraudulent transfer,[9] and unjust enrichment claims and issue proposed findings of fact and conclusions of law on the non-core causes of action.

■ Movants also argue that in the event that this Court determines that it does not have the authority to finally adjudicate the actions, it must dismiss the actions because there is no statutory authority for a bankruptcy court to submit proposed findings of fact and conclusions of law to the district court where the proceeding is "core but precluded by Article III," as it were. Movants base their argument on the text of 28 U.S.C. § 157(c), which provides

A bankruptcy judge may hear a proceeding that is *not a core proceeding* but

9. Movants argue that this Court should not adjudicate the actions against defendants that did not file proofs of claim, and indeed, *Stern's* discussion of *Granfinanciera*—in which the Court held that a fraudulent transfer action against a noncreditor was not a "public right" and thus must be determined by an Article III court where the defendant has demanded a jury trial—could be interpreted to require such a result. *See* 131 S.Ct. at 2614. I agree with the court in *Refco*, however, which points out that *Stern* distinguished counterclaims like Vickie's from those actions that "flow from a federal statutory scheme" and are "completely dependent upon adjudication of a claim created by federal law" and thus could be adjudicated by non-Article III courts. 461 B.R. at 187 (citing *Stern*, 131 S.Ct. at 2614.) *Stern* goes on to note that a preference action was a "right of recovery created by federal bankruptcy law," in contrast to Vickie's counterclaim, which was "no way derived from or dependent upon

bankruptcy law; it is a state tort action that exists without regard to any bankruptcy proceeding." 131 S.Ct. at 2618. The *Stern* court further states that "the question is whether the action at issue *stems from the bankruptcy itself* or would necessarily be resolved in the claims allowance process." *Id.* (emphasis added). In my view, a fraudulent transfer action under § 548, which is expressly created by the Bankruptcy Code—and even under § 544, which creates the right for *the trustee* to step into the shoes of a creditor and pursue state law claims—does in fact "stem from the bankruptcy itself" in the same way as a preference action. Thus, I think the treatment of fraudulent transfer actions against a noncreditor is another question the *Stern* court left unanswered. In this will be discussed below, the fact that some of the Movants did not file proofs of claim is not grounds to *dismiss* this action, which is what Movants are asking me to do here.

that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

28 U.S.C. § 157(c)(1) (emphasis added). According to Movants, this provision means that the bankruptcy court has no authority to make recommendations to the district court where the matter is "core" under the statute but cannot be finally adjudicated by the bankruptcy court because of Article III considerations as expounded in *Stern.* (Doc. # 147, at 16–17.)

Aside from the fact that I conclude that I do have authority to finally adjudicate the core matters in these actions, I reject this argument, as it implies that *Stern* has eviscerated the grant of subject matter jurisdiction to the bankruptcy courts under 28 U.S.C. §§ 1334 and 157(a)—a reading that the *Stern* majority expressly disavowed. 131 S.Ct. at 2607 ("Section 157 allocates the authority to enter final judgment between the bankruptcy court and the district court. That allocation does not implicate questions of subject matter jurisdiction.") (citation omitted). As the court noted in *Refco,* there is language in the *Stern* majority opinion that strongly suggests that any such "core but precluded" proceedings are to be treated as matters "related to" the bankruptcy case, i.e. that the bankruptcy court should make recommendations to the district court:

[T]he current bankruptcy system also requires the district court to review de novo and enter final judgment on any matters that are "related to" the bankruptcy proceedings, § 157(c)(1), and per-

mits the district court to withdraw from the bankruptcy court any referred case, proceeding, or part thereof, § 157(d). Pierce has not argued that the bankruptcy courts "are barred from "hearing" all counterclaims" or proposing findings of fact and conclusions of law on those matters, but rather that it must be the district court that "finally decide[s]" them. We do not think the removal of counterclaims such as Vickie's from core bankruptcy jurisdiction meaningfully changes the division of labor in the current statute; we agree with the United States that the question presented here is a "narrow" one.

131 S.Ct. at 2620 (cited in *Refco,* 461 B.R. at 193) (citations omitted). If Movants' reading of *Stern* were correct, it would both implicate the bankruptcy court's subject matter jurisdiction to hear certain matters and dramatically change the respective roles of the district and bankruptcy courts—two things the *Stern* court repeatedly insisted it did not do with its decision. Further, as the *Refco* court points out, "when addressing the consequences of holding a statute unconstitutional[,] courts must impose a remedy that best corresponds to what Congress would have intended if it had known about such holding." 461 B.R. at 193 (citing *United States v. Booker,* 543 U.S. 220, 246, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005)). Applying that principle to § 157, I agree that "it would be absurd to conclude that the bankruptcy courts are deprived of jurisdiction over matters designated by Congress as core when, for Article III reasons, Congress gave jurisdiction to bankruptcy courts to issue proposed findings of fact and conclusions of law in non-core matters." *Id. Stern* has not changed the bankruptcy court's subject matter jurisdiction, and consequently, this Court can hear any claims—including those at issue here—over which it has at least "related

to" jurisdiction. Where there is such a "related to" matter, this Court can issue proposed findings of fact and conclusions of law to the district court.

Lastly, Movants argue that since this Court cannot conduct a jury trial (which Movants state they intend to demand), it would be a waste of resources for this Court to issue proposed findings of fact and conclusions of law to the district court for *de novo* review. Movants insist that this would somehow result in "two trials, the first leading to a bankruptcy court recommendation; the second to a district court final order." (Doc. #147, at 17.) Going further, Movants argue that the hearing in this Court would "be a mere 'rehearsal' because its outcome will be non-binding on objecting parties and on the court that will conduct the second hearing. It is difficult to conceive of a greater or more unnecessary waste of judicial resources and of the time, money, and other resources of the litigants." (*Id.* at 18.)

The recommendation system that Movants are disparaging is the exact mechanism that 28 U.S.C. § 157(c)(1)—and the court in *Stern*—contemplates and that has long been used by bankruptcy and district courts across the country. These concerns about judicial economy were undoubtedly considered when § 157 was enacted. Moreover, Movants misconstrue what is meant by "*de novo* review." *De novo* review does not mean a *de novo* hearing; rather, it means that "district judge may accept, reject, or modify the proposed findings of fact or conclusions of law, receive further evidence, or recommit the matter to the bankruptcy judge with instructions." Fed. R. Bankr.P. 9033(d). *See also In re Hipp, Inc.*, 895 F.2d 1503, 1519 (5th Cir. 1990) (contrasting review that is "truly *de novo*—i.e., a further trial proceeding at which the determination will be based solely on the evidence freshly presented in

open court at that further proceeding" to "review under Rule 9033(d) which may be solely on the record and without any additional hearing or evidence"). Thus, there will not be "two trials."

█ With regard to Movants' argument that they will demand a jury trial, which I cannot conduct, this issue is not before me as there has been no demand made. Further, once the jury demand is made, it is customary in this district for the bankruptcy court to preside over the action until the case is ready for trial. *See, e.g., Residual Trustee v. The Upper Dock Co., LLC (In re KB Toys, Inc.)*, No. Civ.A. 06–363–KAJ, 2006 WL 1995585, at *1 (D.Del. July 17, 2006); *Wakefern Food Corp. v. C & S Wholesale Grocers, Inc. (In re Big V Holding Corp.)*, Civ.A. 01–233(GMS), 2002 WL 1482392, at *5 (D.Del. July 11, 2002); *Liquidating Trustee of the MPC Liquidating Trust v. Granite Fin. Solutions*, 465 B.R. 384, 393 (Bankr.D.Del.2012). Thus, a right to a jury trial, even when invoked, is not grounds to dismiss the action from this Court.

Lastly, I note that the determination of whether this Court can enter a final judgment in this matter has been rendered academic by the recently issued Amended Standing Order of Reference by the U.S. District Court for the District of Delaware. The existing standing order was amended to add:

> If a bankruptcy judge or district judge determines that entry of a final order or judgment by a bankruptcy judge would not be consistent with Article III of the United States Constitution in a particular proceeding referred under this order and determined to be a core matter, the bankruptcy judge shall, unless otherwise ordered by the district court, hear the proceeding and submit proposed findings of fact and conclusions of law to the district court. The district court may

treat any order of the bankruptcy court as proposed findings of fact and conclusions of law in the event the district concludes that the bankruptcy judge could not have entered a final order or judgment consistent with Article III of the United States Constitution.

Amended Standing Order of Reference, dated Feb. 29, 2012. In other words, the District Court can treat any order issued by this Court as a recommendation if it later determines that Article III precluded me from entering a final judgment.

## Conclusion

For the foregoing reasons, I hold that *Stern* does not preclude this Court from hearing these actions. Accordingly, I will deny the Motions.

## ORDER

For the reasons set forth in the Court's memorandum opinion of this date, the motions of certain defendants to dismiss the adversary proceedings are **denied** as to 1031 Exchange Group, et al., Adv. Proc. No. 10–54648(PJW), Doc. # 146; The Blind Gallery and John Doe 1–10, Adv. Proc. No. 10–53991(PJW), Doc. # 15; Air Performance Service, Inc. and John Doe 1–10, Adv. Proc. No. 10–53918(PJW), Doc. # 17; Atlas Van Lines, Inc. and John Doe 1–10, Adv. Proc. No. 10–54827(PJW), Doc. # 15; Hoefer Wysocki Architects LLC and John Doe 1–10, Adv. Proc. No. 10–54882(PJW), Doc. # 16; IBF Group and John Doe 1–10, Adv. Proc. No. 10–54899(PJW), Doc. # 17; Brooks & Amaden, Inc. and John Doe 1–10, Adv. Proc. No. 10–55219(PJW), Doc. # 16; and New West Paving and John Doe 1–10, Adv. Proc. No. 10–54995(PJW), Doc. # 21.